2002 ND 24

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Robbie Del James ROBERSON, Defendant and Appellant.**

No. 20010053.

Supreme Court of North Dakota.

Feb. 20, 2002.

Adam Hamm, Assistant State's Attorney (on brief), and Wade L. Webb, Assistant State's Attorney (argued), Fargo, for plaintiff and appellee.

Mark A. Beauchene, Fargo, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Robbie Del James Roberson appealed from the trial court's criminal judgment entered after a jury convicted him of two counts of terrorizing. Roberson contends he was denied due process of law during his trial, at which he represented himself, because the trial court did not conduct a hearing to determine his competency to stand trial. Roberson concedes he did not request a competency hearing during trial. He argues, however, that based on his behavior throughout the proceedings, and despite expert opinions finding he was competent to stand trial, the trial court should have ordered a competency hearing on its own motion. We disagree and therefore affirm.

[¶ 2] Roberson was charged with two counts of terrorizing arising from events that occurred on or about July 15, 2000. Before trial, Roberson's trial counsel filed a motion for an order of commitment for evaluation. The trial court held a hearing on the matter on October 31, 2000, and concluded "there is certainly reason to believe that the Defendant is suffering from a mental disease or defect." Accordingly, the trial court ordered Roberson be committed to the James River Correctional Facility for a mental health evaluation. The trial court asked for a report on Roberson's fitness to stand trial and his criminal responsibility at the time of the offenses. Specifically, with regard to Roberson's fitness to stand trial the trial court requested:

1. A report regarding the Defendant's present mental condition as to his ability to understand the proceedings now pending in this Court against him and to assist in his defense thereof;

. . . .

3. [A report answering the following questions] Whether the Defendant is fit to proceed or is unable to effectively communicate with counsel and whether the Defendant will attain fitness to proceed or ability to effectively communicate with counsel and whether the Defendant will attain [fitness] to proceed or

ability to effectively communicate with counsel in the foreseeable future.

[¶ 3] The James River Correctional Center complied with the court order and sent a report to the trial court. The opinion of two experts, Joseph Belanger, Ph.D. and Joanne Roux, M.D., were recorded within the report. Dr. Belanger served as the principal evaluator with regard to Roberson's competency to stand trial. He concluded "it is [my] best professional judgment and recommendation that Mr. Roberson be found trial competent in the sense that he is able to confer coherently with counsel and provide necessary and relevant information to formulate a defense."

[¶ 4] Dr. Roux agreed with Dr. Belanger's conclusions, but she also noted a trial court may disagree with this recommendation. Dr. Roux discussed in detail why the trial court may choose not to follow the expert's advice. Dr. Roux stated the following:

> During the proceedings against him, Mr. Roberson will be at best "difficult" to work with: He tends to ramble and get "off track" (although he can be redirected), he appears rather anxious and is impatient, he tends to argue any point that disagrees with his own point of view, he questions the "State's motives" in regards to the case against him, and he acknowledges that "volatilities may occur" in the Courtroom. In noting that criminal proceedings tend to be "adversarial" in nature, such is apt to be the case even if Mr. Roberson is "allowed" to pursue his intended line of defense. Despite his best intentions, Mr. Roberson might therefore compromise his own ability to do so. Unfortunately, with perhaps the exception of Mr. Roberson's tendency to "ramble," none of the evaluators are able to determine to what extent the aforementioned behaviors are

"willful," and to what extent they may be beyond Mr. Roberson's "volitional control." [In other words, the evaluators cannot determine to what extent Mr. Roberson will simply "choose not to cooperate" during the proceedings against him, and to what extent he actually "lacks the capacity" to do so]. However, it is not beyond reason to note that even if the aforementioned behaviors are under Mr. Roberson's volitional control, he could still potentially benefit from treatment, which—at the very least—could decrease his anxiety, impatience, and tendency to "ramble". In this regards, treatment could potentially improve his ability to participate in his own defense—regardless of what "line of defense" he chooses to follow.

Upon receiving the evaluation, the trial court followed the two experts' recommendation, and found Roberson competent to stand trial.

[¶ 5] On January 12, 2001, the trial court held a hearing to set the date for trial and make any other necessary pretrial arrangements. Roberson began arguing with the trial court almost from the beginning. Among other statements Roberson made he asked, "[w]hy aren't my accusers and my accusatory instruments before me?" The trial court answered:

> Because we are trying to get this thing on for trial, and you know what if you are going to represent yourself, you are at least going to have to cooperate with the process. I'm going to afford you an opportunity to try your case. You'll have the opportunity to do that, ok? But the reality of it is we have got to make some decisions before we can get to that point.

Roberson responded: "No. We're not going to try it. It's not going to be tried in this Court. I refuse—I refuse to have a trial in this Court."

[¶ 6] After many other statements by Roberson, Wade Webb, an assistant state's attorney, reminded the trial court that under N.D.C.C. § 12.1–04–08 the trial court had the power to suspend proceedings to consider the issue of Roberson's competency to stand trial. The trial court responded: "Alright. The problem with—as I look at 12.1–04–08 is that the only evidence I have at this point is the psychological evaluation where they say that he can effectively communicate, although frankly given what I have seen, I doubt it."

[¶ 7] Webb in turn responded: "What I understand 12.1–04–08 to read is that it's the Court's determination based upon a preponderance of evidence. Certainly you have Dr. Rau's [Sic] report, but I do think the Court could certainly rely upon evidence, that which is brought before it at all of the different hearings to make a determination."

[¶ 8] The trial court concluded the discussion by stating: "I think we should just set it for a jury trial and suffer through the pain and just be done with it. We'll see what happens. Let's go ahead and set it on." Thus, the trial court set a date for trial, granted Roberson's request to represent himself, and provided Roberson stand-by counsel.

[¶ 9] The trial commenced. Roberson again behaved poorly in court, just as he had at the past hearings and as the medical evaluation predicted he might. He argued with the trial court and repeatedly ignored its directions. Finally, the trial court made the following findings of fact:

[T]hat the defendant willfully, intentionally and repetitively invaded the province of the court, unlawfully commenting on the law to the jury. He was warned to refrain from such comments. He was advised that failure to do so would result in his removal. He refused.

Second, he has consistently used language that was coarse, inappropriate and unacceptable despite repeated warnings by the Court and refused to follow the rulings of the Court.

Three, that he failed to abide by the evidentiary rulings of the Court repetitively; that when the Court indicated to him that an objection was sustained that he should move on, he continued to go back to the topic. The Court attempted to reason with the defendant. All attempts to reason with the defendant were ineffectual.

Frankly, the defendant has mental illness issues which probably have come into play in this case. He believes that the Court is part of a conspiracy generally and specifically with an intent to deprive him of his liberty. Nothing that I can say or do is going to change that. The State hospital has indicated he is fit to stand trial. The State hospital has indicated that he is fit to participate in the trial of the case.

However, the report did note that he also believed that the Court was part of the conspiracy and that that might prove, quote unquote, problematic, as it has.

In any event, the defendant's conduct included willful disobedience of the Court's directions, a refusal to follow the rules of decorum, refusal to follow the rules of procedure, a refusal to follow the Rules of Evidence and a refusal to show the appropriate dignity to the witnesses, the jurors, counsel and the Court. He is in all manners incapable of following the rulings of the Court, at which point the Court directed that he be excluded.

[¶ 10] The trial court proceeded to appoint Roberson's stand-by counsel as trial counsel. The trial resumed without Roberson in personal attendance as autho-

rized by N.D.R.Crim.P. 43(b)(3). Ultimately, Roberson was convicted by a jury of two counts of terrorizing.

[¶ 11] Roberson did not request a competency hearing before the trial court, and we will not generally address issues not raised below. The only exception to this principle arises when the record reveals an "obvious error affecting the defendant's substantial rights" in the action of the trial court. *See State v. Gleeson*, 2000 ND 205, ¶ 8, 619 N.W.2d 858; *see also* N.D.R.Crim.P. 52(b). Such an error is one which is "prejudicial or affect[s] the outcome of the proceedings." *State v. Gleeson*, 2000 ND 205, ¶ 8, 619 N.W.2d 858.

[¶ 12] The conviction of a mentally incompetent defendant is a violation of the due process safeguards of the United States Constitution made applicable to the States by the Fourteenth Amendment. *See Gleeson* at ¶ 9. Further, N.D.C.C. § 12.1-04-04, provides: "No person who, as a result of mental disease or defect, lacks capacity to understand the proceedings against the person or to assist in the person's own defense shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity endures." To ensure this law's effect, and preserve the constitutional safeguards, trial courts in this State are required to hold competency hearings if there is reasonable doubt as to a defendant's competency to stand trial, even if the defendant has not requested such a hearing. *See Gleeson* at ¶ 10.

[¶ 13] If a defendant is not found competent to stand trial, the proceedings cannot go forward. Accordingly, it is "obvious error affecting the defendant's substantial rights" to fail to hold a competency hearing, either on motion or of its own accord, when there is reasonable

doubt about the defendant's competency to stand trial. *See State v. Gleeson*, 2000 ND 205, ¶ 8, 619 N.W.2d 858; *see also* N.D.R.Crim.P. 52(b).

[¶ 14] The question before this Court "is whether the 'trial judge received information which, objectively considered, should reasonably have raised a doubt about defendant's competency and alerted [the trial court] to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense.'" *See Gleeson*, 2000 ND 205, ¶ 11, 619 N.W.2d 858 (quoting *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir.1980)). Without receiving such information, the trial court is entitled to presume the defendant is competent to stand trial and proceed without a competency hearing. *See Gleeson* at ¶ 11.

[¶ 15] We have noted in the past: "[a]lthough there is no set of facts which invariably establishes a sufficient doubt, the United States Supreme Court has focused on three significant evidentiary factors: the defendant's irrational behavior, the defendant's demeanor before the trial court, and any prior medical opinions on competence to stand trial." *Gleeson*, 2000 ND 205, ¶ 11, 619 N.W.2d 858.

[¶ 16] The United States Court of Appeals for the Eighth Circuit has also focused on whether defense counsel, who is in a unique position to judge the defendant's competency, questioned it before the court. *See Gleeson*, 2000 ND 205, ¶ 11, 619 N.W.2d 858; *see also Speedy v. Wyrick*, 748 F.2d 481, 486–87 (8th Cir.1984)(stating: "[a] doubt expressed by a lawyer in open court concerning the competence of his client to stand trial is unquestionably a factor to be considered in determining whether to hold a competency hearing)."

[¶ 17] In some circumstances, one of these factors standing alone may be sufficient evidence in determining whether further inquiry is required. *Gleeson*, 2000 ND 205, ¶ 11, 619 N.W.2d 858. But, neither Roberson's demeanor or behavior before the trial court is conclusive, for it consisted of precisely the argumentative, difficult rambling that the mental health evaluators predicted would occur, and the cause of which the mental health evaluators were unable to ascertain.

[¶ 18] Setting these two factors aside we are left to consider the actions of Roberson's trial counsel and the medical evaluation. The issue of competency was raised when Roberson's trial counsel moved for a mental health evaluation at the October 31, 2000 hearing. After the hearing the trial court ordered the evaluation. Roberson, however, "fired" this attorney and chose to represent himself. Roberson, despite acting as his own counsel, did not challenge the ultimate findings of the ordered mental health evaluation, even though it found Roberson competent to stand trial. But, because a mentally ill person may not recognize his infirmity, this factor is not decisive. This leaves the only clear factor in the case, the medical evaluation.

[¶ 19] The medical evaluation is unequivocal in its findings. The trial court ordered Roberson to be committed to the James River Correctional Facility for a mental health evaluation. There, two evaluators agreed Roberson was "able to confer coherently with counsel and provide necessary and relevant information to formulate a defense." Thus, the conclusion of the evaluators was that Roberson was competent to stand trial, although, the evaluators warned Roberson would be difficult to work with, which the record reflects he was.

[¶ 20] Roberson relies on his disruptive actions in court as the basis for creating a reasonable doubt as to his competency, thus requiring the trial court to conduct a competency hearing. *See State v. Storbakken*, 246 N.W.2d 78, 81 (N.D. 1976). While disruptive conduct in court on the part of a defendant may, in some instances, constitute sufficient grounds to require the trial court to hold a competency hearing, we do not conclude all disruptive defendants are incompetent to stand trial. Rather, the conduct may be contempt of court. *See* N.D.C.C. § 27-10-01.1(1)(a) (defining contempt of court as "[i]ntentional misconduct in the presence of the court which interferes with the court proceeding or with the administration of justice, or which impairs the respect due the court"). *See, e.g., City of Grand Forks v. Dohman*, 552 N.W.2d 69 (N.D.1996)(affirming an order of contempt for defendant's conduct in making disparaging comments to the jury in a lurid angry voice).

[¶ 21] Here, the trial court was faced with medical evaluations concluding Roberson was competent to stand trial but would prove difficult. On the record, the facts and circumstances presented before the trial court did not create a sufficient doubt of Roberson's competency to stand trial, so as to require the trial court on its own accord to order a second evaluation and hold a formal hearing on Roberson's competency to stand trial. Accordingly, there is no obvious error and the judgment of the trial court is affirmed.

[¶ 22] SANDSTROM, NEUMANN, MARING, and KAPSNER, JJ., concur.