2007 ND 193

**STATE of North Dakota, Plaintiff and Appellee**

v.

**James Peter SABO, Defendant and Appellant.**

No. 20070090.

Supreme Court of North Dakota.

Dec. 13, 2007.

Reid Alan Brady, Assistant State's Attorney, Fargo, N.D., for plaintiff and appellee.

Craig E. Johnson, Johnson, Ramstad & Mottinger, P.L.L.P., Fargo, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1]   James Peter Sabo appeals from a criminal judgment entered after a jury found him guilty of altering an odometer in violation of N.D.C.C. § 39–21–51. Sabo argues the district court erred in denying his motion for judgment of acquittal, the evidence is insufficient to support a conviction, and his right to a fair trial was unduly prejudiced by the State's closing rebuttal argument. We conclude there is sufficient evidence to support Sabo's conviction, and

the State's closing rebuttal argument was not improper. We affirm.

I

[¶ 2] Through his company, Superior Enterprises, Sabo buys salvage vehicles, then repairs and sells them. In the summer of 2005, Sabo purchased a salvaged, four-door, 2004 Honda Civic from Copart, an Internet salvage auction company, for $2,020. Sabo testified the vehicle was not operational when it was delivered. Sabo employs Bill Smith, an auto technician, to repair the salvage vehicles, and Smith completed some of the repairs on the Honda.

[¶ 3] During the trial, Sabo's long-time friend and former employee, Michael Morton, testified he saw the Honda sitting outside Sabo's shop and asked Smith if it was for sale. Morton talked to Smith about the vehicle, and Smith testified he told Morton the vehicle was in good shape but it was not running because it still needed some repairs, including a battery. Morton testified he contacted Sabo about purchasing the vehicle and they agreed Morton would buy the Honda for $14,500. Morton and Sabo testified the vehicle was not operational and they did not know the mileage on the vehicle when they agreed to the sale, but Morton testified he did not think the car could have many miles on it because the engine was clean and looked brand new.

[¶ 4] Morton testified he has keys to Sabo's shop, and after he purchased the Honda, he made repairs to it in Sabo's shop without Sabo's permission. Morton testified the Honda's instrument cluster, which contains the speedometer, tachometer, warning and indicator lights, a digital odometer, and other gauges, had a crack in the lens. Morton testified he contacted Corwin Honda, a local Honda dealership, for advice on how to fix the cracked lens. Morton testified the Corwin Honda mechanics told him the instrument cluster was just a display and it could be replaced with another instrument cluster without changing the mileage shown. Morton testified he replaced the instrument cluster with one from another Honda Civic that Sabo owned. Morton testified he did not know how many miles were on either Honda Civic when he switched the instrument clusters. Sabo testified that he did not know Morton had replaced the instrument cluster, and he did not give him permission to replace it.

[¶ 5] At trial, Scott Miller, a Corwin Honda mechanic, testified that, in a 2004 Honda Civic, a central processing unit within the instrument cluster retains the mileage for the vehicle, and changing the instrument cluster would change the mileage shown on the odometer. Miller testified it would be easier to replace a cracked lens on an instrument cluster than to replace the whole instrument cluster, because, if the whole instrument cluster is replaced, the central processing unit would have to be replaced and the mileage discrepancy has to be fixed by either placing a sticker on the door noting the mileage at the time of the repair or programming the correct mileage into the new central processing unit. He also testified that in his experience working for a dealership, a mechanic would not replace the whole instrument cluster if the only problem was a cracked lens.

[¶ 6] Morton testified he also completed several other repairs on the vehicle, including replacing a seatbelt and several light bulbs. Once the other repairs were completed, Morton testified he installed a battery and took the repaired vehicle to Sabo's residence so it could be inspected by the North Dakota Highway Patrol and the sale could be completed.

[¶ 7] On September 6, 2006, North Dakota Highway Patrol Officer Robert Ar-

man inspected the Honda at Sabo's residence to determine whether the salvaged vehicle was roadworthy. Arman testified that a salvaged vehicle must be inspected before it can be sold, and he has performed over 600 vehicle inspections. Arman testified that it is not part of the Highway Patrol's routine procedure to check a vehicle's mileage, but he has always checked mileage because of his prior training and experience. Sabo testified he has never had an inspector check the mileage on a salvage vehicle prior to this inspection. During the inspection, Arman asked Sabo how many miles were on the vehicle, and Sabo said there were 4,983 miles. Arman verified that the odometer showed the vehicle had 4,983 miles on it. Arman then inspected the vehicle's title and noted the title indicated the vehicle had 26,124 miles on it when Sabo purchased it from Copart. Arman testified Sabo had not filled out the section on the title to indicate a mileage discrepancy. Sabo testified that, with other vehicles, he has not indicated whether there is a mileage discrepancy on the title until after the inspection. Arman informed Sabo there was a discrepancy with the mileage and he would not issue a certificate of inspection for the Honda. Sabo testified he contacted Smith during the inspection, and Smith said he did not replace the odometer when he was working on the vehicle.

[¶ 8]  After the inspection, Arman contacted North Dakota Highway Patrol Officer Tonya Sprecher, the Highway Patrol's odometer fraud expert, and asked her to investigate the vehicle. He testified he notified Sabo that he would come back the next day with Sprecher to continue the investigation. During this conversation, Sabo told Arman that he was trying to sell the vehicle and the buyer was worried about the issues with the inspection, but he did not disclose the name of the buyer to Arman.

[¶ 9]  On September 7, 2006, Sprecher and Arman went to Sabo's residence to further investigate the vehicle. Arman informed Sabo there was a possibility of odometer fraud. Sabo informed the officers that Copart had a picture of the odometer. Arman testified Sabo asserted there were only 4,983 miles on the vehicle, and Sabo claimed Copart probably made a mistake by writing the wrong mileage on the certificate of title because Copart hires people for eight dollars an hour. Sprecher testified Sabo claimed there was probably a clerical error on the mileage portion of the title, and the mileage recorded was probably from a reading of the trip odometer with the decimal point in the wrong place. Sprecher inspected the odometer to check the feasibility of Sabo's claim and found the odometer read "trip A" and "trip B" when the trip mode of the odometer was displayed. Arman testified he asked Sabo the name of the buyer, but Sabo did not answer. Sprecher contacted Copart and they sent her a picture of the Honda's odometer showing the vehicle had 26,124 miles when it was sold to Sabo.

[¶ 10]  On September 11, 2006, Sprecher seized the Honda to complete a more thorough investigation. Sabo told Sprecher the buyer knew about the mileage discrepancy and did not care because the odometer would eventually read 26,000 miles. Sabo did not disclose the identity of the buyer.

[¶ 11]  Smith testified that about a week after the inspection, he found a cracked instrument cluster in Sabo's shop. Sabo testified he tested the cracked instrument cluster and found it had 26,124 miles on it, and he concluded Morton must have switched the two odometers.

[¶ 12]  Todd Vetsch, general manager for Lunde Auto Center, testified at trial that mileage is a factor in deciding the value of a vehicle, and in general, for every

10,000 miles on a vehicle the value decreases by $1,000.

[¶ 13]   At the close of the State's case, the district court denied Sabo's motion for judgment of acquittal. Sabo renewed his motion for judgment of acquittal at the close of the evidence portion of the trial, and the court also denied that motion. The jury found Sabo guilty.

II

[¶ 14]   Sabo argues there is insufficient evidence to support his conviction and the district court erred in denying his motion for judgment of acquittal.

[¶ 15]   Under N.D.R.Crim.P. 29, a court must order entry of judgment of acquittal after the prosecution closes its evidence or after the close of all evidence if the evidence is insufficient to sustain a conviction. Our standard of review for challenges to sufficiency of the evidence is well established:

> In an appeal challenging the sufficiency of the evidence, we look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses. A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts. A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reason-

able doubt. Moreover, a jury may find a defendant guilty even though evidence exists which, if believed, could lead to a not guilty verdict.

*State v. Bertram*, 2006 ND 10, ¶ 5, 708 N.W.2d 913 (quoting *State v. Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819) (citations omitted).

[¶ 16]   Under N.D.C.C. § 39–21–51, it is illegal to alter a motor vehicle odometer for the purpose of deceiving another:

> A person may not willfully, as defined in section 12.1–02–02, alter a motor vehicle odometer or other mileage recorder, . . . or offer for sale or sell a motor vehicle knowing the odometer or other mileage recorder has been altered, for the purpose of deceiving another.

In this case, the jury specifically found Sabo guilty of offering for sale a motor vehicle knowing the odometer has been altered.

[¶ 17]   Sabo does not dispute that he offered to sell a vehicle with an altered odometer, instead he claims he did not have the required intent to be convicted of the offense because he did not know the odometer had been altered and he did not intend to deceive anyone. There was evidence presented that supports his claim. Morton testified he agreed to buy the Honda, he changed the odometer without asking Sabo's permission before making the repair, and he did not care about the mileage discrepancy. Sabo testified he did *not make any repairs on the car himself*, he did not know the odometer had been changed, the buyer was aware of the discrepancy, and he would have indicated there was a mileage discrepancy on the title before the sale was complete. This evidence, if believed, could have lead to a not guilty verdict, however, there was also conflicting evidence and the jury was not required to believe Morton's and Sabo's testimony.

■ [¶ 18] On appeal, we do not weigh conflicting evidence or judge the credibility of the witnesses. *Bertram*, 2006 ND 10, ¶ 5, 708 N.W.2d 913. "[W]e assume the jury believed the evidence supporting the verdict and disbelieved any contrary evidence." *State v. Goebel*, 2007 ND 4, ¶ 32, 725 N.W.2d 578.

■ [¶ 19] Evidence was presented to the jury that supported an inference Sabo knew the odometer had been altered. When Sabo purchased the vehicle it had 26,124 miles on it, but when the vehicle was inspected, it had 4,983 miles on it. The vehicle's odometer was altered while Sabo owned it, and it is a reasonable inference that Sabo knew the mileage on the vehicle. Vetsch testified the mileage on a vehicle affects its value, and there is a reasonable inference that Sabo would not agree to sell the vehicle without knowledge of the mileage. Viewing the evidence in a light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably drawn in its favor, there was sufficient evidence from which the jury could infer Sabo had knowledge of the alteration of the mileage.

■ [¶ 20] Sabo also claims there is not evidence that the vehicle was offered for sale with the intent to deceive another, because his buyer knew about the altered odometer and did not care. Viewing the evidence in the light most favorable to the verdict, however, there was sufficient evidence to infer Sabo had an intent to deceive. Arman testified Sabo told him during the inspection the car had 4,983 miles, Sabo continued to assert the car had only 4,983 miles even after learning there was a discrepancy with the mileage on the title, and Sabo alleged the company he bought the car from made a mistake on the title. Sprecher gave similar testimony. She also testified that Sabo changed his story, first claiming there was an error on the title, and then claiming the buyer knew about the discrepancy but did not care. There was evidence Sabo knew it was not standard procedure for an inspector to check the mileage when inspecting a vehicle, he did not indicate on the title that there was a mileage discrepancy before the vehicle was inspected, his explanation for the discrepancy changed many times, he did not disclose the name of the buyer when Arman and Sprecher were investigating, and Sabo could sell the car for a higher amount if the mileage was lower. A defendant's conduct may be considered as circumstantial evidence of the required criminal intent. *State v. Olson*, 552 N.W.2d 362, 364 (N.D.1996). The evidence of Sabo's intent is circumstantial, but circumstantial evidence is often the only way to prove criminal intent, and a verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts. *State v. Stensaker*, 2007 ND 6, ¶ 21, 725 N.W.2d 883. There was sufficient evidence from which the jury could infer Sabo had an intent to deceive.

[¶ 21] The jury judged the credibility of the witnesses, weighed the evidence, and found Sabo guilty. When the evidence and all reasonable inferences are viewed in a light most favorable to the verdict, we conclude there is sufficient evidence to support the verdict.

III

[¶ 22] Sabo argues the State's closing rebuttal argument was improper because it was not limited to responding to the matters raised in his closing argument. He claims the State went well beyond rebutting his argument because the State attacked the credibility of witnesses and evidence, attacked his character, and argued Sabo had the burden of proof. He claims the State reserved its argument for rebuttal, and he was unduly prejudiced

because he was not afforded an opportunity to respond.

[¶ 23] Under N.D.R.Crim.P. 29.1, the prosecution gives its closing argument first, the defense gives its closing argument next, and then the prosecution is entitled to reply in rebuttal. The prosecution's rebuttal is limited by the defendant's closing argument, and the prosecution may only address the issues raised in the defendant's closing argument. *See United States v. Sarmiento*, 744 F.2d 755, 765 (11th Cir.1984).

[¶ 24] The district court has discretion to control the scope of the closing argument, and we will not reverse unless there is a clear abuse of discretion. *State v. Clark*, 2004 ND 85, ¶ 7, 678 N.W.2d 765. Unless the error is fundamental, the defendant must show the State's comments during argument were improper and prejudicial. *State v. Skorick*, 2002 ND 190, ¶ 11, 653 N.W.2d 698. "To be prejudicial, improper closing argument must have stepped beyond the bounds of any fair and reasonable criticism of the evidence, or any fair and reasonable argument based upon any theory of the case that has support in the evidence." *Clark*, at ¶ 7. "Error is unfairly prejudicial only if it causes substantial injury to the defendant such that a different decision would have resulted absent the error." *State v. Ebach*, 1999 ND 5, ¶ 5, 589 N.W.2d 566.

[¶ 25] During Sabo's closing argument, his attorney claimed the evidence did not support a conviction and the State did not meet its burden of proof. Relying on Sabo's and Morton's testimony and their explanation of how the mileage discrepancy occurred, Sabo's attorney claimed Sabo did not have the knowledge required to be convicted of altering an odometer because Sabo did not make the repairs on the vehicle, had not been in the vehicle before the inspection, and did not know the odometer had been replaced.

[¶ 26] In response to Sabo's closing argument, the State's rebuttal focused on the evidence relating to Sabo's knowledge that the odometer had been altered and whether he had an intent to deceive. The State called Sabo's stories amazing and questioned whether the stories were reliable and believable. The State's argument included attacking Morton's and Sabo's credibility:

The Defendant's current story is that he didn't know what the mileage was. His friend, Michael Morton, had switched the instrument clusters without his knowledge and he didn't know the mileage of the Honda. I ask you, who would sell a vehicle without knowing the mileage? Further than that, who would sell a vehicle, again he says for $14,500, without even inspecting the vehicle? He said that he never even looked at that—inspected the vehicle.

What goes hand in hand with that? What about Mr. Morton? You recall his testimony, he just switched the instrument clusters, didn't know how many miles were in the old—the replacement vehicle or in the new one. He agreed to pay $14,500 for that vehicle. He said he had no clue as to the number of miles. He said that he thought it was low because the engine looked nice or clean.

Failure to provide the buyer's name. The Defendant never gave two (sic) law enforcement the name of his alleged buyer. He came to Court yesterday with Mr. Morton. Mr. Morton executed an affidavit on his behalf, and Mr. Morton conceded that that was executed at the end of January of this year, approximately 4½ months after Mr. Morton himself learned of this situation. The Defendant had multiple opportunities, multiple contacts with law enforcement.

The day of the inspection, the day after the inspection, phone calls from the troopers, the day that Trooper Sprecher came and seized the vehicle. Multiple times. During none of those times did he identify the name of the buyer. He referred to the buyer. Trooper Arman indicated that he had asked for the buyer, but the Defendant never provided the name of the buyer.

I sort of touched on this with the last one. The delay of Michael Morton coming forward, again it was 4½ months from the time that he learned about the vehicle that he was allegedly going to buy, that he allegedly switched the instrument cluster out of, to the time that he came forward by executing an affidavit. Never contacted law enforcement. This was his long time friend of 10–11 years, that had been charged with a crime whose vehicle had been seized.

. . . .

And finally, we will look at the Defendant and his buyer, or alleged buyers, prior convictions. Mr. Morton himself had multiple convictions for possession of stolen property, burglary, and sale of stolen property. The Defendant himself had a prior conviction from 2003 for Attempting to Deface a Vehicle Identification Number. If you recall, he conceded that, that crime he admitted guilt to required fraudulent intent. He had a story for that too, you'll probably recall.

[¶ 27] The State's rebuttal argument was limited to questioning the plausibility of Sabo's explanation of how the discrepancy occurred, and answering Sabo's claim that the State failed to meet its burden of proving each element of the offense. The State's argument attacking Sabo's and Morton's credibility was made in response to Sabo's reliance on their testimony as proof that the State had not met its burden of proof. Although the State commented on Morton's failure to contact law enforcement and Sabo's changing explanations, the State did not argue Sabo had the burden to prove his innocence. Rather, the State's rebuttal was limited to addressing the issues Sabo raised in his closing argument and was a fair and reasonable criticism of the evidence. We conclude the State's closing rebuttal argument was not improper and not prejudicial.

## IV

[¶ 28] We conclude there is sufficient evidence to sustain Sabo's conviction, and the State's closing rebuttal argument was not improper. We affirm the criminal judgment.

[¶ 29] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.