2010 ND 108

**STATE of North Dakota, Plaintiff and Appellee**

**v.**

**Darin Wayne DAHL, Defendant and Appellant.**

**Nos. 20090261, 20090262.**

Supreme Court of North Dakota.

June 10, 2010.

Charles Alan Stock, State's Attorney, Finley, ND, for plaintiff and appellee.

Joel Lyle Larson, Grand Forks, ND, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Darin Dahl appeals the district court judgments entering verdicts finding him guilty of reckless endangerment and attempted murder. We affirm.

I

[¶ 2] On April 9 and 10, 2008, Dahl was the suspect of a police standoff in a rural Steele County residence. During the standoff, Dahl shot at and missed a police officer deploying chemical munitions into the house, leading to the charge of reckless endangerment. Also during the standoff, Dahl shot and hit an officer who had entered the residence in an attempt to arrest Dahl, leading to the charge of attempted murder. In the afternoon of April 10, 2008, Dahl voluntarily surrendered and was arrested.

[¶ 3] On May 21, 2008, the district court ordered Dahl committed to the State Hospital for a mental evaluation. Dahl's evaluation was completed in October 2008 by Dr. Robert Lisota. Dr. Lisota diagnosed Dahl with schizophrenia undifferentiated type with paranoid features, concluding Dahl was competent to stand trial and could effectively communicate with his attorney. A second evaluation was completed by Dr. Stacey Benson with results summarized in a report dated May 28, 2009. Dr. Benson concluded Dahl "is not currently capable of aiding in his own defense."

[¶ 4] A competency hearing was held on May 29, 2009. The district court considered both doctors' reports as well as testimony from Dr. Benson. Dahl did not object to Dr. Lisota's absence at the hearing. The district court concluded Dahl was competent to stand trial, finding him to be manipulative and capable of assisting in his defense.

[¶ 5] Dahl's jury trial was held from June 2 to June 5, 2009. Testimony was received from many of the officers involved with Dahl's standoff, as well as from Dr. Benson and Dr. Lisota. On the trial's fourth day, Dahl was not sat in the courtroom but was placed in an adjacent room out of the jury's sight. These steps were taken because Dahl was fitted with a spit mask, shackles and an orange prison uniform, and the district court feared Dahl would be prejudiced if the jury observed him in this fashion. Officers overseeing Dahl told the court Dahl's restraints were necessary because overnight Dahl had urinated on his cell floor, broken his cell's light and resisted removal from his cell. At the close of trial, the jury returned verdicts finding Dahl guilty of attempted murder and of reckless endangerment. Dahl timely filed this appeal.

II

[¶ 6] Dahl argues the district court erred in determining he had the

mental capacity to assist in his own defense. "Whether or not a defendant is competent to stand trial is a question of fact for the trial judge[,] . . . [a]nd the trial judge's finding on the issue of competency will not be set aside on review unless it is clearly erroneous." *State v. Heger*, 326 N.W.2d 855, 858 (N.D.1982) (citations omitted). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made." *Heckelsmiller v. State*, 2004 ND 191, ¶ 5, 687 N.W.2d 454.

[¶ 7] The standard for determining if a criminal defendant is competent to stand trial is set forth in *State v. Gleeson:*

> "It has long been held the conviction of a mentally incompetent accused is a violation of constitutional due process. *Dusky v. United States*, 362 U.S. 402 [80 S.Ct. 788, 4 L.Ed.2d 824] (1960). The United States Supreme Court has summarized the test for determining if an accused is mentally competent to stand trial. *Id.* A defendant is incompetent when he lacks (1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' or (2) 'a rational as well as factual understanding of the proceedings against him.' *Dusky*, 362 U.S. at 402, 80 S.Ct. 788. This test is essentially codified at section 12.1–04–04, N.D.C.C., which states: 'No person who, as a result of mental disease or defect, lacks capacity to understand the proceedings against the person or to assist in the person's own defense shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity endures.' "

2000 ND 205, ¶ 9, 619 N.W.2d 858. Dahl concedes he had an adequate understanding of the proceedings against him, but he argues he was not able to assist in his defense by coherently conferring with his attorney. The crux of being able to "consult with a lawyer with a reasonable degree of rational understanding" is being able to "confer coherently with counsel and provide necessary and relevant information to formulate a defense." *State v. VanNatta*, 506 N.W.2d 63, 65, 68 (N.D. 1993).

[¶ 8] Although this case involves conflicting evidence concerning Dahl's ability to assist in his defense by coherently interacting with his attorney, sufficient evidence exists supporting the district court's finding Dahl was competent to stand trial. The doctors testified Dahl remembered the facts of his case, had moments of clarity, had a good understanding of the legal proceedings, knew where he was and understood the harm caused by his actions. Further, Dr. Benson conceded the possibility that Dahl is malingering. The district court weighed the conflicting reports of Dr. Lisota and Dr. Benson, giving more credence to Dr. Lisota's report and concluding Dahl could adequately confer with his attorney. "Conflicts in testimony [are] resolved in favor of affirmance, as we recognize the trial court is in a superior position to assess credibility of witnesses and weigh the evidence." *State v. Tollefson*, 2003 ND 73, ¶ 9, 660 N.W.2d 575 (quoting *State v. Heitzmann*, 2001 ND 136, ¶ 8, 632 N.W.2d 1). Accordingly, we conclude the district court did not err in finding Dahl competent to stand trial.

A

[¶ 9] Dahl argues the district court's competency decision was improperly based on Dr. Lisota's stale psychological

evaluation. Indeed, the district court found Dr. Lisota's evaluation to be more convincing, thereby placing greater weight on Dr. Lisota's seven-month-old evaluation than it did on Dr. Benson's one-day-old evaluation. While a competency determination must analyze a defendant's present capacity to stand trial, this does not mean a defendant's most recent psychological evaluation is conclusive evidence on the issue of competency. *State v. Fischer*, 231 N.W.2d 147, 157 (N.D.1975). Rather, the date the psychological evaluation was performed is a factor to be considered along with the contents therein. *Id.* ("The contents of a report, rather than its age, in the absence of other factors, should be controlling."). Both Dr. Lisota and Dr. Benson completed thorough evaluations of Dahl, including interviews, tests and record reviews. Although the two doctors reached differing conclusions, the district court reviewed the relevant evidence and found Dr. Lisota's evaluation to be more convincing. Based on the district court's superior position to assess credibility and on this Court's reluctance to reweigh conflicting evidence, the district court did not err in relying on Dr. Lisota's psychological evaluation. *Tollefson*, 2003 ND 73, ¶ 9, 660 N.W.2d 575.

### B

[¶ 10] Dahl argues the district court erred by failing to reevaluate his competency during trial. Dahl asserts his behavior before the fourth day of trial required the district court either to perform an informal competency evaluation of Dahl or to postpone the trial and hold a second competency hearing. The propriety of a trial court's decision to not sua sponte hold a competency hearing is reviewed for obvious error. *State v. Roberson*, 2002 ND 24, ¶ 13, 639 N.W.2d 690.

[¶ 11] A trial court must sua sponte hold a competency hearing when evidence establishes sufficient doubt as to a criminal defendant's competency to stand trial. *Gleeson*, 2000 ND 205, ¶ 10, 619 N.W.2d 858. Successfully challenging a trial court's failure to hold such a hearing requires a showing that the "trial judge received information which, objectively considered, should reasonably have raised a doubt about defendant's competency and alerted him to the possibility that the defendant could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense." *Id.* at ¶ 11 (quotation omitted). We have identified four nonexclusive factors that aid in this determination: "the defendant's irrational behavior, the defendant's demeanor before the trial court, [ ] any prior medical opinions on competence to stand trial [and] ... whether trial counsel questioned the defendant's competency before the court." *Id.*

[¶ 12] Dahl's vandalism of his cell could be described as irrational behavior. However, Dahl's vandalism occurred in his holding cell before the fourth and final day of trial. The record contains no instances of outbursts in the courtroom, and cogent evidence indicates Dahl's jail cell conduct was an attempt to manipulate the judicial system. Further, the district court reviewed two psychological evaluations at Dahl's competency hearing, and Dahl's trial counsel did not question his client's competency, acquiescing instead in Dahl's removal from the courtroom on the trial's final day. The record reflects it was not obvious error for the district court to forego reevaluating Dahl's competency following the vandalism of his cell.

### III

[¶ 13] Dahl argues the district court erred by not requiring Dr. Liso-

ta to attend Dahl's competency hearing. Dahl asserts Dr. Lisota's absence affected his constitutional right to confront adverse witnesses. Although the source of the alleged error is a violated constitutional right, Dahl failed to object to Dr. Lisota's absence at the competency hearing; therefore, this issue is reviewed for obvious error. *State v. Smuda,* 419 N.W.2d 166, 167–68 (N.D.1988). "To establish obvious error, a defendant must demonstrate (1) error, (2) that is plain, and (3) affects substantial rights." *State v. Myers,* 2009 ND 141, ¶ 10, 770 N.W.2d 713 (quotation omitted). An alleged error does not amount to obvious error unless a "clear deviation from an applicable legal rule under current law" is established. *State v. Olander,* 1998 ND 50, ¶ 14, 575 N.W.2d 658.

[¶ 14] We have not addressed whether a criminal defendant's pre-trial competency hearing invokes Confrontation Clause protections as a critical stage of a criminal proceeding. *But see State v. Woinarowicz,* 2006 ND 179, ¶ 11, 720 N.W.2d 635 (holding criminal defendant's pre-trial suppression hearing was not a critical stage of criminal proceeding). The Eighth Circuit Court of Appeals has addressed this issue and determined a criminal defendant's pre-trial competency hearing is a critical stage of a criminal proceeding, entitling the defendant to representation by counsel. *Raymond v. Weber,* 552 F.3d 680, 684 (8th Cir.2009). For purposes of this appeal we assume, without deciding, that a criminal defendant's pre-trial competency hearing is a critical stage of criminal proceedings, invoking the defendant's Confrontation Clause protections. Under this assumption, Dahl's right to confront adverse witnesses at his competency hearing was violated when the district court allowed Dr. Lisota's testimonial evaluation into evidence without requiring Dr. Lisota to be present at the hearing. *Melendez–Diaz v.*

*Massachusetts,* —— U.S. ——, —— – ——, 129 S.Ct. 2527, 2531–32, 174 L.Ed.2d 314 (2009) (holding admission of chemical analyst's certified results violated criminal defendant's confrontation rights where the analyst was not present at trial and where analyst's document was effectively an affidavit providing testimony against defendant). Despite this plain error, Dahl's obvious error argument fails because he does not demonstrate how the district court's presumed error affected his substantial rights.

[¶ 15] Errors affect a defendant's substantial rights when they are prejudicial or "affect[ ] the outcome of the proceeding." *State v. Krull,* 2005 ND 63, ¶ 6, 693 N.W.2d 631. "Analyzing obvious error requires examination of the entire record and the probable effect of the alleged error in light of all the evidence." *Id.* (quotation omitted). Dahl asserts Dr. Lisota's absence affected the outcome of the proceeding because cross-examining Dr. Lisota at the competency hearing would have revealed Dr. Lisota's opinion as was expressed at trial, where Dr. Lisota indicated the Dahl he evaluated in late 2008 appeared to be a different man than the Dahl Dr. Benson evaluated in May 2009. Although Dr. Lisota's trial admission reduces the potency of his evaluation, Dahl does not present any evidence that hearing Dr. Lisota's acknowledgment at the competency hearing would have altered the district court's determination on competency. To succeed in his argument, Dahl would have needed to present evidence from Dr. Lisota indicating that he evaluated a different Dahl than Dr. Benson evaluated and that his opinion of Dahl's competence to stand trial has changed as a result. Without this, Dahl fails to demonstrate the alleged error affected his substantial rights, and we are left to conclude the district court did not

commit obvious error in conducting the competency hearing without Dr. Lisota being present.

[¶ 16] As a result of Dahl's failure to object to Dr. Lisota's absence from Dahl's competency hearing, the procedural posture of this case prevents this Court from addressing a number of issues that may have been relevant under other circumstances. *State v. Manning*, 2006 ND 125, ¶ 10, 716 N.W.2d 466 ("this Court need not reach issues not necessary to its disposition of a case"). As mentioned above, the threshold issue would have been if pretrial competency hearings are a critical stage of criminal prosecution, invoking the defendant's constitutional right to confront adverse witnesses. As corollaries to the first issue, this Court might have been called on to determine whether Dr. Lisota's report was testimony against Dahl and whether Dahl's statutorily granted subpoena power would have satisfied his right to confrontation, assuming such a right exists. Again, however, without proper objections at trial, we are confined to applying the obvious error standard of review, under which we conclude Dr. Lisota's absence did not affect Dahl's substantial rights. *Smuda*, 419 N.W.2d at 167–68.

## IV

[¶ 17] Dahl argues insufficient evidence exists to sustain his convictions because the State failed to disprove his lack of criminal responsibility defense beyond a reasonable doubt.

"In an appeal challenging the sufficiency of the evidence, we look only to the evidence and reasonable inferences most favorable to the verdict to ascertain if there is substantial evidence to warrant the conviction. A conviction rests upon insufficient evidence only when, after reviewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational fact finder could find the defendant guilty beyond a reasonable doubt. In considering a sufficiency of the evidence claim, we do not weigh conflicting evidence, or judge the credibility of witnesses. A verdict based on circumstantial evidence carries the same presumption of correctness as other verdicts. A conviction may be justified on circumstantial evidence alone if the circumstantial evidence has such probative force as to enable the trier of fact to find the defendant guilty beyond a reasonable doubt."

*State v. Noorlun*, 2005 ND 189, ¶ 20, 705 N.W.2d 819 (citations omitted). Dahl asserts he was not criminally responsible for his actions at the time of the alleged shootings. "Lack of criminal responsibility is a 'defense' to criminal conduct, and once it is raised by a defendant, the State must prove its nonexistence beyond a reasonable doubt." *State v. Klose*, 2003 ND 39, ¶ 22, 657 N.W.2d 276.

"1. An individual is not criminally responsible for criminal conduct if, as a result of mental disease or defect existing at the time the conduct occurs:

    a. The individual lacks substantial capacity to comprehend the harmful nature or consequences of the conduct, or the conduct is the result of a loss or serious distortion of the individual's capacity to recognize reality; and

    b. It is an essential element of the crime charged that the individual act willfully.

"2. For purposes of this chapter, repeated criminal or similar antisocial conduct, or impairment of mental condition caused primarily by voluntary use of alcoholic beverages or controlled substances immediately before or contem-

poraneously with the alleged offense, does not constitute in itself mental illness or defect at the time of the alleged offense. Evidence of the conduct or impairment may be probative in conjunction with other evidence to establish mental illness or defect."

N.D.C.C. § 12.1–04.1–01.

[¶ 18] Here, sufficient evidence indicates Dahl was criminally responsible for his conduct. Dahl's awareness of the harmful nature of his actions was demonstrated by Dahl's calm interactions with police negotiators, his repeatedly-expressed concerns over the jail time he would receive and where the time would be served, his attempts to negotiate his prospective sentence with police officers, the letter left by Dahl to the standoff house's owner apologizing for the damage and his verbal apology to the arresting sheriff at the standoff's conclusion. Evidence also indicates Dahl's conduct was not caused by a loss or distortion of his capacity to recognize reality. Dr. Lisota testified that the symptoms of Dahl's schizophrenia waxed and waned and that Dahl's personality disorder likely played the most significant role the night of the standoff. Dr. Lisota went on to explain that Dahl's personality disorder did not significantly hamper Dahl's ability to recognize the reality of his situation and that Dahl did not report act-ing in response to any internal stimuli on the night of the standoff. Based on the testimony of Dr. Lisota and the police officers associated with Dahl's standoff, sufficient evidence exists allowing a reasonable jury to find Dahl's lack of criminal responsibility defense was disproved beyond a reasonable doubt.

### V

[¶ 19] We affirm the district court's judgments, concluding the district court did not err in finding Dahl competent to stand trial, the district court did not commit obvious error by conducting Dahl's competency hearing without Dr. Lisota present and the jury's verdict finding Dahl guilty of reckless endangerment and attempted murder is supported by sufficient evidence.

[¶ 20] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.