2011 ND 118

**In the Interest of T.S., a Child**

**State of North Dakota, Petitioner and Appellee**

v.

**T.S., minor child, Respondent**

**and**

**C.S., father, Respondent and Appellant.**

**No. 20100322.**

Supreme Court of North Dakota.

June 21, 2011.

Ashley Heitkamp, Assistant State's Attorney, Jamestown, N.D., for petitioner and appellee.

Daniel J. Borgen, Grand Forks Public Defender Office, Grand Forks, N.D., for respondent and appellant.

MARING, Justice.

[¶ 1] C.S. appeals from a juvenile court's order adjudicating his child, T.S., a delinquent and unruly child for committing disorderly conduct. C.S. argues insufficient evidence exists to support the juvenile court's findings of fact and asserts the juvenile court violated T.S.'s constitutional rights by failing to sua sponte conduct a competency hearing. We affirm.

I

[¶ 2] On June 1, 2010, the State petitioned the juvenile court to find T.S. is a delinquent child. The State asserted T.S. had committed two separate acts of disorderly conduct in violation of N.D.C.C. § 12.1–31–01(1). On July 1, 2010, the State amended its petition, alleging T.S. is also an unruly child under N.D.C.C. § 27–20–02(19)(b) in need of treatment and rehabilitation.

[¶ 3] The juvenile court held an adjudication hearing on August 26, 2010. At the hearing, the State presented evidence about the two alleged acts of disorderly conduct. The State asserted the first act of disorderly conduct involved a classroom incident. T.S.'s second-grade teacher testified that while attending class on May 4, 2010, T.S. started screaming words that were not making sense. The teacher asked T.S. to go to the back of the room to calm down. T.S. went to the back of the room, but once there, he started throwing objects at the teacher's aide. When the aide tried to stop him from throwing objects, T.S. kicked the aide. As a result, T.S. was taken to the principal's office. The principal testified T.S. kicked her and swallowed a marble while in her office. Concerned for his safety and the safety of the other students and staff members, the principal attempted to contact T.S.'s father, but could not reach him. The principal then contacted the school's resource officer for assistance. The officer removed T.S. from school.

[¶ 4] The second act of disorderly conduct took place on a school bus. The bus driver testified that while driving the special needs bus on May 6, 2010, she heard T.S. scream "[b]ang, bang, T's dead," referring to another student on the bus. T.S. then started screaming the "N" word. The bus driver stopped the bus and attempted to calm T.S. down. She asked T.S. to go to the front of the bus, but he refused and called her "asshole" and "fat ass." The bus driver used physical force to restrain T.S.

[¶ 5] The juvenile court issued its findings of fact and order of disposition on August 30, 2010. The juvenile court found T.S. was a delinquent and unruly child. The court, however, deferred disposition to allow for the appointment of counsel for C.S., T.S.'s father, during the dispositional phase of the delinquency proceedings.

[¶ 6] On September 13, 2010, the juvenile court held a dispositional hearing. At the hearing, the State called as its witnesses T.S.'s new school principal, a number of psychologists, T.S.'s social worker, and T.S.'s guardian ad litem. The testimony offered at the hearing established T.S. suffers from an oppositional defiance disorder and depression and that the best treatment option for T.S. is a placement outside the home.

[¶ 7] On September 17, 2010, the juvenile court issued its findings of fact and order of disposition. The juvenile court found T.S. is a delinquent child and an unruly child in need of treatment and rehabilitation. The court concluded it is in the best interest of T.S. to be removed from the care of his father and be placed in the care, custody, and control of Stutsman County Social Services for a period of one year. C.S. subsequently requested the juvenile court change the duration of the placement from one year to a period not to exceed twelve months. The juvenile court granted the request.

II

[¶ 8] Under N.D.R.Civ.P. 52(a), we review a juvenile court's factual findings under a clearly erroneous standard of review, with due regard given to the opportunity of the juvenile court to judge the credibility of the witnesses. "A finding of fact is clearly erroneous if there is no evidence to support it, if the reviewing court is left with a definite and firm conviction that a mistake has been made, or if the finding was induced by an erroneous view of the law." *Interest of A.R.*, 2010 ND 84, ¶ 5, 781 N.W.2d 644. We review questions of law de novo. *Id.*

## III

■ [¶ 9] C.S. argues insufficient evidence exists to support the juvenile court's finding T.S. is a delinquent and unruly child.

■ [¶ 10] "A conviction rests upon insufficient evidence when, even after viewing the evidence in the light most favorable to the prosecution and giving the prosecution the benefit of all inferences reasonably to be drawn in its favor, no rational factfinder could have found the defendant guilty beyond a reasonable doubt." *Interest of L.B.B.*, 2005 ND 220, ¶ 10, 707 N.W.2d 469.

[¶ 11] The State petitioned the juvenile court to find T.S. is a delinquent and an unruly child, alleging T.S. committed two separate acts of disorderly conduct in violation of N.D.C.C. § 12.1–31–01(1)(a), (b), and (g). Section 12.1–31–01(1), N.D.C.C., provides:

> An individual is guilty of a class B misdemeanor if, with intent to harass, annoy, or alarm another person or in reckless disregard of the fact that another person is harassed, annoyed, or alarmed by the individual's behavior, the individual:
>
> a. Engages in fighting, or in violent, tumultuous, or threatening behavior;
>
> b. Makes unreasonable noise;
>
> . . .
>
> g. Creates a hazardous, physically offensive, or seriously alarming condition by any act that serves no legitimate purpose . . .

[¶ 12] C.S. argues the juvenile court clearly erred in finding T.S. is a delinquent and unruly child for having committed the two acts of disorderly conduct alleged by the State in its petition because T.S. did not have the requisite intent to commit the offenses. Noting T.S. was seven years and eight months old at the time of the acts, C.S. urges us to extend the statutory presumption of incapacity for children under the age of seven to T.S. *See* N.D.C.C. § 12.1–04–01 ("Persons under the age of seven years are deemed incapable of commission of an offense defined by the constitution or the statutes of this state."). Our case law and criminal statutes, however, provide otherwise.

[¶ 13] We have long stated the legislature has the power to determine the age of criminal responsibility. *See Interest of M.C.H.*, 2001 ND 205, ¶ 7, 637 N.W.2d 678 (quoting *Matter of R.Y.*, 189 N.W.2d 644, 646–47 (N.D.1971)). The North Dakota Legislative Assembly has set the age of criminal responsibility for children at age seven and has provided that children under seven years of age shall be deemed incapable of committing a criminal offense. *Matter of R.Y.*, 189 N.W.2d at 646–47 (quoting Penal Code, Dakota Territory, 1877, Sec. 16(2)); *see also* N.D.C.C. § 12.1–04–01. Thus, contrary to C.S.'s assertion, the statutory presumption is that children over the age of seven have the capacity to form the requisite criminal intent. Accordingly, we conclude that, as a matter of law, children over the age of seven are presumed capable of forming the intent for committing a criminal offense. T.S. was over the age of seven at the time he committed the two acts of disorderly conduct.

■ [¶ 14] Further, the record shows T.S. had the requisite intent. We have stated that, often, the only method of proving criminal intent is through circumstantial evidence. *State v. Olson*, 552 N.W.2d 362, 364 (N.D.1996). "A defendant's conduct may be considered as circumstantial evidence of the required criminal intent." *State v. Sabo*, 2007 ND 193, ¶ 20, 742 N.W.2d 812. Here, the bus driver testified she observed T.S. harassing another stu-

dent and using derogatory language while riding the school bus. T.S.'s teacher testified T.S. has threatened to harm himself and others and has regularly engaged in fighting and violent behavior toward classmates and school staff members. Additionally, the principal at T.S.'s school testified she has observed T.S. kick and hit others and use profane and offensive language on multiple occasions. Based on the record, we conclude sufficient evidence exists to support the juvenile court's finding T.S. had the intent to commit the two acts of disorderly conduct alleged in the State's petition. Therefore, the juvenile court did not clearly err in finding T.S. is a delinquent and unruly child.

## IV

[¶ 15] C.S. argues the juvenile court violated T.S.'s due process rights by failing to sua sponte order a competency hearing to determine whether T.S. was competent to proceed with the adjudicative stage of the delinquency proceedings.

[¶ 16] The due process right of a juvenile to be determined competent as a prerequisite to the adjudicative stage of a delinquency proceeding is an issue of first impression in North Dakota. Thus, we must first determine whether due process demands a juvenile be afforded the right to a competency hearing before he is subjected to the adjudicative phase of delinquency proceedings. If such a right exists, we must determine whether the juvenile court erred by failing to sua sponte order a competency hearing for T.S.

## A

[¶ 17] The United States Supreme Court has long recognized that although juvenile proceedings are civil in nature and must not conform with all of the requirements of a criminal trial, such proceedings "must measure up to the essentials of due process and fair treatment." *Kent v. United States*, 383 U.S. 541, 554, 562, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The essential requirements of due process and fair treatment encompass the right to notice of the charges, the right to counsel, the right to confrontation and cross-examination of witnesses, and the privilege against self-incrimination. *In re Gault*, 387 U.S. 1, 34, 41, 55, 57, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Due process also requires that the allegations in a delinquency petition be proven beyond a reasonable doubt and protects a juvenile from double jeopardy. *In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (proof beyond a reasonable doubt); *Breed v. Jones*, 421 U.S. 519, 529–31, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (double jeopardy); *cf. McKeiver v. Pennsylvania*, 403 U.S. 528, 545, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (holding due process does not require a trial by jury in juvenile proceedings).

[¶ 18] Competency to stand trial is fundamental to our adversary system of justice, because upon it depend the rights encompassed in the essential requirements of due process and fair treatment, including the right to effective assistance of counsel, the right to call, confront, and cross-examine witnesses, and the right to testify on one's behalf or to remain silent without a penalty for doing so. *See Drope v. Missouri*, 420 U.S. 162, 171–72, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Thus, we have held the conviction of a mentally incompetent individual violates due process of law. *State v. Roberson*, 2002 ND 24, ¶ 12, 639 N.W.2d 690; *see also State v. Gleeson*, 2000 ND 205, ¶ 9, 619 N.W.2d 858 (stating the conviction of a mentally incompetent accused violates the due process safeguards of the United States Constitution made applicable to the States by the Four-

teenth Amendment); U.S. Const. Ams. V, XIV; N.D. Const. Art. I, § 12. To preserve these due process safeguards in adult criminal trials, we have required trial courts in North Dakota to sua sponte hold a competency hearing when evidence raises sufficient doubt as to an accused's competency to stand trial. *Roberson*, at ¶ 12; *see also State v. Dahl*, 2010 ND 108, ¶ 11, 783 N.W.2d 41. We have also held that " '[n]either the Fourteenth Amendment nor the Bill of Rights is for adults alone.' " *Interest of R.W.S.*, 2007 ND 37, ¶ 15, 728 N.W.2d 326 (quoting *Gault*, 387 U.S. at 13, 87 S.Ct. 1428); *see also Haley v. Ohio*, 332 U.S. 596, 601, 68 S.Ct. 302, 92 L.Ed. 224 (1948) ("Neither man nor child can be allowed to stand condemned by methods which flout constitutional requirements of due process of law."). Accordingly, we now hold that juveniles have a due process right not to be subjected to the adjudicative stage of juvenile proceedings while incompetent. By so holding, we join a number of other jurisdictions that have previously considered the issue and have similarly concluded the right not to be tried while mentally incompetent is as fundamental in juvenile proceedings as it is in adult criminal trials. *See, e.g., In re Carey*, 241 Mich.App. 222, 615 N.W.2d 742, 746–47 (2000) (recognizing a juvenile's right not to be tried while legally incompetent); *see also In re Williams*, 116 Ohio App.3d 237, 687 N.E.2d 507, 510 (1997) (holding that the right not to be tried while incompetent is fundamental in juvenile proceedings); *State v. E.C.*, 83 Wash.App. 523, 922 P.2d 152, 155 (1996) (recognizing the right of juveniles to competency determination); *In re S.H.*, 220 Ga.App. 569, 469 S.E.2d 810, 811 (1996) (stating the rights afforded juveniles would be meaningless without the right to competency determination); *State ex rel. Dandoy v. Superior Ct.*, 127 Ariz. 184, 619 P.2d 12, 15 (1980) ("The requirements of due process

necessitate the conclusion that the juvenile court must have the power to inquire into a juvenile's mental competency prior to adjudication."); *In re Welfare of S.W.T.*, 277 N.W.2d 507, 511 (Minn.1979) (holding that in the context of a juvenile delinquency adjudicatory proceeding, the right not to be tried or convicted while incompetent is a fundamental right); *In re Two Minor Children*, 95 Nev. 225, 592 P.2d 166, 169 (1979) (recognizing a due process right to a competency hearing for juveniles); *In re Causey*, 363 So.2d 472, 476 (La.1978) (stating the right of an incompetent juvenile not to be subjected to juvenile proceedings is fundamental and essential); *James H. v. Superior Ct. of Riverside Co.*, 77 Cal. App.3d 169, 174, 143 Cal.Rptr. 398 (1978) (holding juveniles have a due process right to be afforded a hearing when a competency question arises).

B

■ [¶ 19] Having held that due process demands a juvenile be afforded the right to a competency hearing before he is subjected to the adjudicative phase of delinquency proceedings, we now turn to whether the juvenile court erred by failing to sua sponte order a competency hearing for T.S.

■ [¶ 20] We review a trial court's failure to sua sponte order a competency hearing for obvious error affecting the accused's substantial rights. *Gleeson*, 2000 ND 205, ¶ 8, 619 N.W.2d 858. An error affects substantial rights if it is prejudicial or if it affects the outcome of the proceedings. *Id.*

■ [¶ 21] The test for determining an accused's competency to stand trial is whether the accused "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding [ ] and whether he has a rational as

well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). In the past, we have applied the competency test enunciated in *Dusky* only to adult criminal defendants. *See, e.g., Gleeson*, 2000 ND 205, ¶ 9, 619 N.W.2d 858 (applying the competency test enunciated in *Dusky* to an adult criminal defendant); *see also* N.D.C.C. § 12.1-04-04 ("No person who, as a result of mental disease or defect, lacks capacity to understand the proceedings against the person or to assist in the person's own defense shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity endures."). However, because no rule or statute expressly controls the procedure for competency determinations in juvenile proceedings, we now adopt the test for competency to stand trial, enunciated by the United States Supreme Court in *Dusky* and applicable to adult criminal defendants, as the proper test for determining whether a juvenile is competent to proceed with the adjudicative stage of a delinquency proceeding.

■■■ [¶ 22] We have explained, however, that "[o]n appeal, the issue is not whether the [accused] was competent to stand trial, but rather whether the failure to hold a competency hearing constitutes a denial of due process." *Gleeson*, at ¶ 9 (citing *United States v. Day*, 949 F.2d 973, 982 (8th Cir.1991)). A trial court must sua sponte hold a competency hearing when evidence establishes sufficient doubt as to an accused's competency to stand trial. *Dahl*, 2010 ND 108, ¶ 11, 783 N.W.2d 41. A successful challenge to a trial court's failure to hold such a hearing requires a showing the trial court "received information which, objectively considered, should reasonably have raised a doubt about [the accused's] competency and alerted [the court] to the possibility that [the accused]

could neither understand the proceedings or appreciate their significance, nor rationally aid his attorney in his defense." *Id.* Without such information, the trial court is entitled to presume the accused is competent to stand trial and to proceed without a competency hearing. *Gleeson*, at ¶ 11.

■■■ [¶ 23] We have identified four, nonexclusive factors relevant to determining whether the evidence before the trial court should reasonably have raised a doubt as to the accused's competency: (1) the accused's irrational behavior; (2) the accused's demeanor before the trial court; (3) any prior medical opinions on the competency of the accused to stand trial; and (4) any questioning of the accused's competency by counsel before the trial court. *Dahl*, 2010 ND 108, ¶ 11, 783 N.W.2d 41. Here, T.S.'s behavior and his demeanor before the juvenile court do not raise sufficient doubt about his competency. *See State v. Fischer*, 231 N.W.2d 147, 153 (N.D.1975) (stating the record contained no evidence of defendant's irrational behavior); *Dahl*, at ¶ 12 (explaining the record contained no evidence of disruptive demeanor in the courtroom). Further, defense counsel did not present any prior medical opinions on whether T.S. was competent to proceed and did not raise an issue of T.S.'s competency before the juvenile court. *See, e.g., Dahl*, at ¶ 12 (noting trial counsel did not question his client's competency). We generally will not entertain an issue for the first time on appeal from a juvenile court proceeding unless the issue concerns an obvious error that affects a substantial right of the juvenile. *Interest of H.K.*, 2010 ND 27, ¶ 16, 778 N.W.2d 764. It is obvious error affecting the juvenile's substantial rights for the juvenile court to fail to hold a competency hearing of its own accord when sufficient doubt about the juvenile's competency to proceed exists. *See Roberson*, 2002 ND

24, ¶ 13, 639 N.W.2d 690. Based on our review of the record, we conclude the evidence before the juvenile court, objectively considered, did not raise sufficient doubt of T.S.'s competency to proceed with the adjudicative stage of the delinquency proceedings. Accordingly, we conclude the juvenile court did not violate T.S.'s due process rights by failing to sua sponte order a competency hearing and we decline to find an obvious error.

## V

[¶ 24] The order of the juvenile court is affirmed.

[¶ 25] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.