2014 ND 174

**Karmen LINDSEY, Petitioner
and Appellant**

v.

**STATE of North Dakota, Respondent
and Appellee.**

No. 20140036.

Supreme Court of North Dakota.

Aug. 28, 2014.

Kevin McCabe, Office of the Public Defender, Dickinson, N.D., for petitioner and appellant.

Nathan K. Madden, Assistant State's Attorney, Williston, N.D., for respondent and appellee.

McEVERS, Justice.

. [¶ 1] Karmen Lindsey appeals from a district court order summarily dismissing her application for post-conviction relief from a conviction entered after her 2007 guilty plea to a charge of murder. Because we conclude Lindsey's application for post-conviction relief failed to establish a genuine issue of material fact regarding her claims for ineffective assistance of counsel, newly discovered evidence, and prosecutorial misconduct, we affirm.

I

[¶ 2] In March 2006, Lindsey was charged with murder, a class AA felony, for allegedly stabbing her mother multiple times with a knife and causing her death. In August 2006, Lindsey filed a court notice of her intention to assert a defense of lack of criminal responsibility. In October 2006, the State filed a disclosure of its expert witness, Dr. Joseph Belanger, who was then employed by the State Hospital and had conducted a psychological evaluation of Lindsey, and found she did not meet the standard for establishing a lack of criminal responsibility. In February 2007, Lindsey moved for an order prohibiting the State from using Dr. Belanger's psychological evaluation and testimony at trial, asserting the State failed to provide an audio or video recording of Lindsey's examination to her or the court, as required by N.D.C.C. § 12.1–04.1–08.

[¶ 3] In March 2007, after making her motion regarding Dr. Belanger, Lindsey pleaded guilty to the charge under a plea agreement. The district court entered a criminal judgment, sentencing her to 40 years in prison, with the last 20 years suspended for five years. In June 2007, Lindsey moved for a sentence reduction, which the district court denied. In August 2008, Lindsey filed an application for post-conviction relief, which the court later allowed her to withdraw in 2009.

[¶ 4] In April 2012, Lindsey filed this post-conviction relief application, asserting grounds of ineffective assistance of counsel

and newly discovered evidence and seeking to withdraw her guilty plea. The court appointed counsel to represent her in the proceedings. In July 2013, Lindsey's appointed-counsel filed a supplemental brief with 16 attached exhibits in support of her application, arguing additional grounds of ineffective counsel, newly discovered evidence, and prosecutorial misconduct. Lindsey's exhibits included copies of psychological evaluations of Lindsey conducted by Dr. Belanger and by her expert witness, Dr. Robert Gulkin. Dr. Gulkin's evaluation, dated June 27, 2006, concluded Lindsey was suffering from a mental disease or defect at the time of the charged offense.

[¶ 5] The State responded to Lindsey's claims and moved to dismiss her application, asserting Lindsey failed to demonstrate a genuine issue of material fact and her application should be dismissed on grounds of laches. In response, Lindsey did not submit any additional evidence but relied on her previously submitted brief. In December 2013, the district court granted the State's motion, summarily dismissing Lindsey's post-conviction relief application in part on the ground of laches.

## II

[¶ 6] Under N.D.C.C. § 29–32.1–09, a party may move for summary disposition in post-conviction relief proceedings if the application, pleadings, previous proceedings, discovery, or other matters on the record show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[1]

[¶ 7] We review an appeal from a district court's summary dismissal of a post-conviction relief application in the same manner as an appeal from summary judgment. *Coppage v. State*, 2011 ND 227, ¶ 8, 807 N.W.2d 585; *Henke v. State*, 2009 ND 117, ¶ 9, 767 N.W.2d 881. "The party opposing the motion is entitled to all reasonable inferences at the preliminary stages of a post-conviction proceeding and is entitled to an evidentiary hearing if a reasonable inference raises a genuine issue of material fact." *Coppage*, at ¶ 8 (quotation marks omitted).

[¶ 8] When the State moves for summary dismissal, the burden shifts to the applicant to support the application with evidence that raises a genuine issue of material fact:

> A petitioner is not required to provide evidentiary support for his petition until he has been given notice he is being put on his proof. At that point, the petitioner may not merely rely on the pleadings or on unsupported, conclusory allegations, but must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact. If the petitioner presents competent evidence, he is then entitled to an evidentiary hearing to fully present that evidence.

*Coppage*, 2011 ND 227, ¶ 9, 807 N.W.2d 585 (quoting *Henke*, 2009 ND 117, ¶ 11, 767 N.W.2d 881). The district court may, however, summarily dismiss a post-conviction relief application when the State establishes there are no genuine issues of material fact. *Coppage*, at ¶ 9; *Henke*, at ¶ 12.

## III

[¶ 9] Lindsey argues the district court erred in summarily dismissing her post-

---

1. In 2013, the legislature amended N.D.C.C. §§ 29–32.1–01 and 29–32.1–09 relating to limitations and summary disposition in post-conviction proceedings, which became effective on August 1, 2013. *See* N.D. Sess. Laws ch. 248, §§ 1, 2; *Chisholm v. State*, 2014 ND 125, ¶ 8, 848 N.W.2d 703. Because Lindsey applied for post-conviction relief on April 25, 2012, we apply the former version of the statutes.

conviction relief application, asserting the court's decision was "clearly erroneous" and the doctrine of laches should not apply to this case.

██ [¶ 10] "Laches is a delay or lapse of time in commencing an action that works a disadvantage or prejudice to the adverse party because of a change in conditions during the delay." *Williams Cnty. Soc. Servs. Bd. v. Falcon*, 367 N.W.2d 170, 174 (N.D.1985); *see also* N.D.R.Civ.P. 8(c) (listing laches as an affirmative defense). In *Johnson v. State*, 2006 ND 122, ¶ 15, 714 N.W.2d 832, this Court held the State may raise laches as a defense in defending post-conviction relief applications. We said to prevail on a laches defense, the State must prove by a preponderance of the evidence: (1) the applicant has unreasonably delayed in seeking relief, and (2) the delay has prejudiced the State. *Id.*

██ In *Johnson*, 2006 ND 122, ¶¶ 17–18, 714 N.W.2d 832, this Court analyzed the requirements to establish laches and concluded the district court had not abused its discretion in permitting the State to amend its answer to allege the defense of laches and in denying Johnson's motion to amend his application to assert an untimely claim that his guilty plea was not entered intelligently, knowingly, and voluntarily. We then addressed Johnson's argument the court had erred in summarily dismissing a post-conviction relief claim that he had received ineffective assistance of counsel because his counsel had not moved for a second, independent mental evaluation. *Id.* at ¶¶ 19–22. We ultimately concluded Johnson's counsel's actions did not fall below an objective standard of reasonableness, because Johnson was entitled to and received one competent evaluation at public expense by a doctor at the State Hospital. *Id.* at ¶ 22.

[¶ 12] Lindsey argues the district court's decision to dismiss her post-convic-

tion relief application without an evidentiary hearing is "clearly erroneous" because she raised numerous material fact issues and should have been allowed to present testimony at an evidentiary hearing. She argues the doctrine of laches should not apply to this case, the district court failed to explain how the delay was unreasonable, and she disputes the facts the State asserts show it has been prejudiced to the point that it could not maintain its case against Lindsey.

[¶ 13] In the context of a summary disposition, the district court here made factual findings in its order summarily dismissing Lindsey's entire application. The court found the State had met the unreasonable-delay element for laches because Lindsey had waited almost seven years to challenge her guilty plea on the effectiveness of her counsel's performance and Lindsey had known her mental condition was an issue at the time she pleaded guilty. The court further found the State had met the prejudice element to establish a laches defense. The court found the State's ability to defend against Lindsey's application, and potentially against a defense of lack of criminal responsibility at a trial, had been materially diminished because, as the State asserted, Lindsey's defense counsels' files no longer existed, Lindsey's father had died, the lead investigator from the Bureau of Criminal Investigations had died, the physical evidence of the murder had been destroyed, and Dr. Belanger was "unavailable" due to his incarceration.

██ [¶ 14] This Court has explained that the affirmative defense of laches, when properly raised and supported, presents a question of fact and is inappropriate for a district court to decide on summary judgment. *See Diocese of Bismarck Trust v. Ramada, Inc.*, 553 N.W.2d 760, 767 (N.D.1996); *North Dako-*

ta State Engineer v. Schirado, 373 N.W.2d 904, 910 (N.D.1985); *Falcon,* 367 N.W.2d at 174. "Whether or not laches bars a claim must be determined by examining the underlying facts and circumstances of each particular case." *Falcon,* at 174. Unlike *Johnson,* which involved the district court's exercise of discretion in amending post-conviction relief pleadings, the court in this case made findings of fact on the State's laches defense to support summary disposition on all of Lindsey's claims. On this record, we conclude the court erred in making factual findings on the State's affirmative defense of laches and in summarily dismissing Lindsey's post-conviction relief application on that ground.

[¶ 15] Nonetheless, this Court will not set aside a correct result merely because the district court's reasoning was incorrect, if the result is the same under the correct law and reasoning. *See Dahl v. State,* 2013 ND 25, ¶ 11, 826 N.W.2d 922; *State v. Moore,* 2010 ND 229, ¶ 8, 791 N.W.2d 376; *Roth v. State,* 2007 ND 112, ¶ 17, 735 N.W.2d 882. Because the State moved for summary disposition of Lindsey's application, Lindsey was put to her proof, and the burden shifted to her to support her application with evidence raising a genuine issue of material fact. Thus, to avoid summary disposition in this case, Lindsey had to produce evidence sufficient to raise a genuine issue of material fact in support of withdrawal of her guilty plea.

## IV

[¶ 16] Generally, when a post-conviction relief applicant seeks to withdraw a guilty plea, the district court looks to whether relief is necessary to correct a "manifest injustice." *See Moore v. State,* 2013 ND 214, ¶ 10, 839 N.W.2d 834. " 'When a defendant applies for post-conviction relief seeking to withdraw a guilty plea, we ... treat the application as one made under N.D.R.Crim.P. [11](d).' " *Moore,* at ¶ 10 (quoting *Greywind v. State,* 2004 ND 213, ¶ 7, 689 N.W.2d 390). "Withdrawal is allowed when necessary to correct a manifest injustice." *Moore,* at ¶ 10. "Before accepting a plea of guilty, the court must ... determine that the plea is voluntary and did not result from force, threats, or promises other than promises in a plea agreement." N.D.R.Crim.P. 11(b)(2). "Waivers of constitutional rights, such as guilty pleas, must be done freely and voluntarily." *Moore,* at ¶ 11.

[¶ 17] When a defendant pleads guilty on the advice of counsel, the defendant " 'may only attack the voluntary and intelligent character of the guilty plea.' " *Damron v. State,* 2003 ND 102, ¶ 9, 663 N.W.2d 650 (quoting *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)). Unless a defendant can prove "serious derelictions" on the part of the defendant's attorney that kept a plea from being knowingly and intelligently made, the defendant will be bound by that guilty plea. *Damron,* at ¶ 13 (citing *McMann v. Richardson,* 397 U.S. 759, 774, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). "In criminal cases, the defendant has the burden to present evidence to overcome the presumption that defense counsel is competent and adequate, and to do so, the defendant must point 'to specific errors made by trial counsel.' " *Damron,* at ¶ 13 (quoting *State v. Slapnicka,* 376 N.W.2d 33, 36 (N.D.1985)). In this case, Lindsey's post-conviction relief application and supplemental brief seek to have her guilty plea set aside on grounds of ineffective assistance of counsel, newly discovered evidence, and prosecutorial misconduct.

## A

[¶ 18] Lindsey claims she received ineffective assistance of counsel leading to her guilty plea.

[¶ 19] An applicant for post-conviction relief bears a "heavy burden" to prevail on an ineffective assistance of counsel claim. *See Bahtiraj v. State,* 2013 ND 240, ¶ 8, 840 N.W.2d 605; *Patten v. State,* 2008 ND 29, ¶ 9, 745 N.W.2d 626.

> [T]o prevail on a post-conviction relief application based on ineffective assistance of counsel, the petitioner must (1) "show that counsel's representation fell below an objective standard of reasonableness" and (2) "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984).

> Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial or in pretrial proceedings, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. . . . It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.

> *Premo v. Moore* [562 U.S. 115], 131 S.Ct. 733, 739–40 [178 L.Ed.2d 649] (2011) (internal quotations and citations omitted). The two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart,* 474 U.S. 52, 58 [106 S.Ct. 366, 88 L.Ed.2d 203] (1985). "Thus, a defendant must demonstrate both deficient representation by counsel *and* prejudice caused by the deficient

representation." *Woehlhoff v. State,* 487 N.W.2d 16, 17 (N.D.1992) . . . .

> The first prong is measured using "prevailing professional norms," *Sambursky v. State,* 2006 ND 223, ¶ 13, 723 N.W.2d 524, and is satisfied if [the defendant] proves counsel's conduct consisted of errors serious enough to result in denial of the counsel guaranteed by the Sixth Amendment. *See Strickland,* 466 U.S. at 687 [104 S.Ct. 2052].

*Bahtiraj,* 2013 ND 240, ¶¶ 9–10, 840 N.W.2d 605. The second prong of the *Strickland* test is satisfied in the context of a guilty plea if the defendant shows " 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " *Ernst v. State,* 2004 ND 152, ¶ 10, 683 N.W.2d 891 (quoting *Hill,* 474 U.S. at 59, 106 S.Ct. 366); *see also Bahtiraj,* at ¶¶ 15–16.

[¶ 20] In her April 2012 application, Lindsey claims she received ineffective assistance of counsel because her attorneys failed to obtain transcripts of Dr. Belanger's interviews with her, which she asserts contain Dr. Belanger's "admission" that she was under psychosis at the time of her crime, contrary to his final psychological evaluation report. She claims her attorneys "coerced" her into taking the plea before the transcripts were made available and Dr. Belanger's "indecisiveness" could be shown. Lindsey also contends her attorney in her previous post-conviction action, which was withdrawn, was ineffective for failing to consult with her regarding her right to appeal.

[¶ 21] In her July 2013 supplemental brief, Lindsey raises a multitude of other claims that she asserts show she received ineffective assistance of counsel. Although she was represented by two attorneys, she asserts that shortly before trial the two

attorneys dissolved their law firm and she was required to choose an attorney to continue to represent her. She asserts that, although she picked one of the attorneys, the other attorney remained involved in the plea negotiations and she felt pressured by the other attorney to accept the plea agreement. She asserts she received "conflicting advice" from the two attorneys and the other attorney, whom she had not chosen to represent her, told her that she should plead guilty based on Dr. Belanger's psychological evaluation. She argues that although she had her own expert, she was not told that a jury would take both experts into account and relied on the other attorney's advice.

[¶ 22] Lindsey further claims she was "heavily medicated" when she came to her decision to plead guilty. She claims the other attorney, whom she had not chosen to represent her, told her she did not need a pre-sentence investigation, she was "confused" regarding who was representing her, and neither of her attorneys reviewed transcripts from the psychological evaluation. She also asserts she was medicated at the time of her change of plea hearing, which her attorney at the hearing, whom she claims was the attorney she had chosen to represent her, did not bring to the attention of the judge at the time she pleaded guilty.

[¶ 23] The record in this case reflects the district court followed the mandates of N.D.R.Crim.P. 11 for accepting a guilty plea, and Lindsey entered a voluntary plea of guilty under a plea agreement at the change of plea hearing on March 27, 2007. Neither Lindsey nor her attorney claimed she lacked knowledge of the plea agreement terms at that hearing. Lindsey also acknowledged that she was waiving her rights, in addition to her lack of criminal responsibility defense:

THE COURT: Ms. Lindsey, it is obvious that you have been involved in listening to the plea agreement as well. Is that the plea agreement as you understand it?

THE DEFENDANT: Yes, your Honor.

THE COURT: Very well. I have a series of questions for you, Ms. Lindsey, and some advice for you that I am obligated to go over so I am confident that you understand what is going on.

First, so that we are all on the same page, you must understand the charge that you are facing today. The charging portion of the Complaint or the Information states that on the 15th of March, 2006, in or near Williston, the said Defendant, Karmen Lindsey, intentionally and knowingly caused the death of another human being, to wit: Karmen Lindsey knowingly and intentionally caused the death of Karen Lindsey by stabbing Karen Lindsey with a knife several times.

To that plea there has been a notice filed which advises that you intended to assert a defense of lack of criminal responsibility by reason of mental disease or defect at the time of the alleged crime. When a person is charged with a crime, it is the obligation of the State to prove all of the allegations beyond a reasonable doubt.

And when there is a defense of lack of criminal responsibility that is claimed, it is the responsibility of the State to negate that lack of criminal responsibility. In other words, they would have to prove that you were not suffering from the defect of lack of criminal responsibility at the time.

Do you understand those things?

THE DEFENDANT: Yes, sir.

THE COURT: You have various rights, and I am going to go over them

with you and ask you if you understand them.

Do you understand that you have the right to plead not guilty, and in this case you have the right to persist in that belief of not guilty. You understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: You understand that as of this point, you have the right to a jury trial, that the jury would have to find their verdict beyond a reasonable doubt.

You have the right to a speedy public trial.

You have the right to be represented by counsel, by an attorney, during that trial and at every stage of the proceedings.

You understand all of those things?

THE DEFENDANT: Yes, your Honor.

THE COURT: You have the right at the trial to confront and cross examine any witnesses that would be brought by the State. You would have the right to call witnesses. You would have the right to subpoena witnesses. In other words, make sure that they show up.

You would have the right to testify if you wish. On the other hand, you wouldn't have to testify. And if you wouldn't testify, that is not held against you in any manner whatsoever.

You understand those rights?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you enter a plea of guilty, you waive those trial rights.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Have you and your attorney visited enough so that you are comfortable that you understand the nature of the charge to which you are pleading?

THE DEFENDANT: Yes, your Honor.

THE COURT: Let me explain to you the penalties that are available on this charge. This is a class double-A murder. The maximum potential penalty for a double-A murder is life imprisonment without parole. There is a mandatory fee of a thousand twenty-five dollars.

In addition to that potential penalty, there are some conditions that are attached to double-A felonies. Among them are that you aren't eligible to have the parole board consider granting parole for thirty-five years. You also are subject, because this would come under the heading of a dangerous offender because of the use of weapons, et cetera, you must understand that whatever sentence you are given, eight-five percent of the sentence must be served.

You understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Your willingness to enter a plea in this matter, that result— does that result from any force, threats or promises that anyone has made, either your attorney, State's Attorney, the police or anyone else, other than the plea agreement that has been set forth in open court?

THE DEFENDANT: No, your Honor.

THE COURT: So this is your voluntary plea based on the facts as you understand them?

THE DEFENDANT: Yes.

THE COURT: Am I correct in assuming that your plea to this charge is based upon the plea agreement that was recited?

THE DEFENDANT: Yes, sir.

THE COURT: At this time, I am going to ask you for your plea to the matter. That will be followed by a factual basis for the plea and the recitation of other pertinent information. At any rate, at this time, based upon the information that I have given you, based upon the information that you have gleaned prior to court, and based upon the plea agreement and, of course, conditioned upon the Court's acceptance of the plea agreement, how do you plead to the charge of murder, class double-A felony? Guilty or not guilty?

THE DEFENDANT: Guilty.

[¶ 24] "Although we have stated claims of ineffective assistance of counsel are ordinarily unsuited to summary disposition without an evidentiary hearing, we have upheld summary denials of post-conviction relief when the applicants were put to their proof, and summary disposition occurred after the applicants then failed to provide some evidentiary support for their allegations." *Murphy v. State*, 2014 ND 84, ¶ 4, 845 N.W.2d 327 (quoting *Parizek v. State*, 2006 ND 61, ¶ 4, 711 N.W.2d 178) (internal quotation marks omitted). Here, we conclude Lindsey has not provided evidence sufficient to establish a genuine issue of material fact that her attorneys' conduct fell below an objective standard of reasonableness.

[¶ 25] Lindsey generally claims that her attorneys had failed to obtain transcripts of Dr. Belanger's interviews, but when she entered her guilty plea she was aware that she would be waiving her defense of lack of criminal responsibility and she had had her own expert's evaluation at the time of her guilty plea. She contends that she was confused as to which attorney was representing her, received conflicting advice, and felt pressured to plead guilty under the plea agreement, but at the change of plea hearing Lindsey was represented by the attorney whom she asserts she wanted to represent her and indicated to the court that she had visited with her attorney enough to be comfortable and understood the nature of the charge. Further, although she claims she was "heavily medicated," she has submitted no medical records supporting her assertion. An exhibit in the record only showed that she had medication prescribed when she was at the State Hospital in 2006, but there is nothing indicating what medication she would have been on at the time of her guilty plea in March 2007 or of the effects of such medication. Lindsey has not submitted affidavits from either of her attorneys to support any of the issues raised.

[¶ 26] In regard to Lindsey's claim that her post-conviction attorney was ineffective, Lindsey has failed to show how her attorney was ineffective for not advising her on appeal, when her 2008 application was withdrawn.

[¶ 27] Based on our review of the record, we conclude Lindsey failed to raise a genuine issue of material fact showing her counsels' representation fell below an objective standard of reasonableness, such that under prevailing professional norms her attorneys' conduct consisted of errors serious enough to result in the denial of counsel guaranteed by the Sixth Amendment. We conclude that summary disposition was appropriate regarding Lindsey's claimed ineffective assistance of counsel challenge to her guilty plea.

**B**

[¶ 28] Lindsey claims that newly discovered evidence concerning the State's expert witness, Dr. Belanger, requires that she be permitted to withdraw her guilty plea. It is undisputed by the parties that, approximately six months after Lindsey was sentenced in March 2007, Dr. Belan-

ger was arrested by federal authorities and subsequently incarcerated on charges of possession of child pornography.

[¶ 29] Post-conviction relief may be granted on grounds of newly discovered evidence when "[e]vidence, not previously presented and heard, exists requiring vacation of the conviction or sentence in the interest of justice." N.D.C.C. § 29–32.1–01(1)(e). We have said this ground for relief "is similar to a request for a new trial based on newly discovered evidence under N.D.R.Crim.P. 33 and requires the same proof to prevail." *Syvertson v. State*, 2005 ND 128, ¶ 9, 699 N.W.2d 855; *see also Moore v. State*, 2007 ND 96, ¶ 12, 734 N.W.2d 336. "A defendant who has previously pled guilty and then seeks post-conviction relief under N.D.C.C. § 29–32.1–01(1)(e) must demonstrate a manifest injustice, justifying withdrawal of the guilty plea." *Moore*, at ¶ 12. We have also explained the manifest injustice analysis for newly discovered evidence is similar to the N.D.R.Crim.P. 33 analysis in the context of a guilty plea:

> The defendant must show (1) the evidence was discovered after the guilty plea, (2) the failure to learn about the evidence before the plea was not the result of the defendant's lack of diligence, (3) the newly discovered evidence is material to what would have been the issues at trial, and (4) the weight and quality of the newly discovered evidence would likely result in an acquittal at trial.

*Moore*, at ¶ 12.

[¶ 30] Here, Lindsey's "newly discovered" evidence pertains to Dr. Belanger's arrest and subsequent convictions for possessing child pornography. Lindsey claims that Dr. Belanger was not in a position to evaluate her psychological condition based on his 2007 arrest and his subsequent letter to the State Board of

Psychologist Examiners, dated November 27, 2007, in which he acknowledged he was mentally ill, suffering "melancholic depressions and anxiety attacks [which] became worse as [he] started to do the evaluations of sexually dangerous individuals." Dr. Belanger also admitted in this letter that he was "frightened of the world and of women" regarding his own sexual issue. Lindsey contends Dr. Belanger's evaluation of her is unreliable because he was mentally ill at the time of the evaluation and had she known this information, she could have made a stronger case and would not have taken the guilty plea. She also notes other courts have granted new trials for other defendants based on the subsequent child pornography convictions of Dr. Belanger. *See In re Detention of Spears*, 2009 WL 1066769, 770 N.W.2d 852 (Iowa Ct.App. April 22, 2009) (unpublished); *In re Detention of Blaise*, 2009 WL 1066767, 770 N.W.2d 852 (Iowa Ct. App. April 22, 2009) (unpublished).

[¶ 31] Lindsey arguably may have satisfied some of the requirements, but we conclude she has not established that "the weight and quality of the newly discovered evidence would likely result in an acquittal at trial." *Moore*, 2007 ND 96, ¶ 12, 734 N.W.2d 336. Although the claimed newly discovered evidence may have been relevant in attacking Dr. Belanger's credibility at trial, Lindsey has presented no evidence in this post-conviction proceeding that Dr. Belanger's analysis and conclusions in his psychological evaluation completed in October 2006 is in any way incorrect. She has submitted no affidavit showing Dr. Belanger was suffering from debilitating mental illness at the time he completed her evaluation. She has submitted no evidence to undermine Dr. Belanger's analysis and conclusions. Although she notes other courts have granted new trials, in those cases Dr. Belanger

actually testified at trial as to whether individuals were sexually violent predators under Iowa law so as to justify civil commitment.

[¶ 32] When Lindsey pleaded guilty to the charge of murder, she had knowledge of both her interview with Dr. Belanger and her own expert's psychological evaluation to present her defense at trial. Lindsey, however, waived her opportunity to challenge the evidence against her at trial by pleading guilty. While the newly discovered evidence of Dr. Belanger's subsequent convictions may have provided material for cross-examination, based on this record we cannot say the weight and quality of this evidence would result in her acquittal at trial. We conclude Lindsey failed to raise a genuine issue of material fact that her "newly discovered evidence" was sufficient to establish manifest injustice, justifying withdrawal of her guilty plea.

### C

[¶ 33] In her supplemental brief supporting her post-conviction relief application, Lindsey contends the State engaged in prosecutorial misconduct when it failed to produce to her defense counsel any video or audio recordings of her interviews with Dr. Belanger. However, Lindsey waived the right to challenge any non-jurisdictional defects, including constitutional rights, occurring before the entry of her guilty plea. *See State v. Blurton*, 2009 ND 144, ¶ 22, 770 N.W.2d 231; *McMorrow v. State*, 2003 ND 134, ¶ 5, 667 N.W.2d 577.

[¶ 34] Lindsey contends the State's prosecutorial misconduct was "devastating" to her defense because, based on the State's failure to provide audio or video recordings of her interviews, the State should not have been permitted to use Dr. Belanger's report at that time. She asserts her discussions on recordings contra-

dict elements of Dr. Belanger's final evaluation. Lindsey, however, concedes that before she had pleaded guilty, her counsel had made a motion in limine based on the State's failure to comply with N.D.C.C. ch. 12.1–04.1 and the State had responded that the failure to produce the recordings was an oversight. She thus knew of a potential evidentiary issue when she pleaded guilty.

[¶ 35] Moreover, in response to the State's motion for summary disposition in this post-conviction proceeding, Lindsey did not submit any recordings or transcripts and specify precisely how these materials were "devastating" to her defense when she entered her guilty plea. On this record, we conclude Lindsey has failed to establish that her guilty plea was not entered voluntarily and intelligently, such that withdrawal of her guilty plea is necessary to correct a manifest injustice.

### V

[¶ 36] We have considered Lindsey's remaining arguments and find them to be either unnecessary to our decision or without merit. The district court order summarily dismissing Lindsey's post-conviction relief application is affirmed.

[¶ 37] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.