# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2020 ND 100

Richard Dodge,                                                    Petitioner and Appellant

     v.

State of North Dakota,                                    Respondent and Appellee

### No. 20190286

Appeal from the District Court of Stutsman County, Southeast Judicial District, the Honorable Tristan Jones Van de Streek, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Justice.

Kiara C. Kraus-Parr, Grand Forks, ND, for petitioner and appellant.

Frederick R. Fremgen, State's Attorney, Jamestown, ND, for respondent and appellee.

**VandeWalle, Justice.**

[¶1]  Richard Dodge appealed from a district court order denying his application for post-conviction relief. On appeal, Dodge argues he was not competent to enter his pleas and he received ineffective assistance of counsel. We affirm.

I

[¶2]  Dodge was charged with five felonies and a misdemeanor in December 2015. Dodge was appointed counsel. In April 2016, Dodge's counsel moved the court to withdraw because the attorney-client relationship was "irreparably broken and rendered unreasonably difficult." The court granted the motion, and Dodge was appointed substitute counsel in May 2016.

[¶3]  In July 2016, Dodge himself filed a "motion to dismiss counsel," stating: "I, Richard Dodge, am dismissing . . . my attorney due to a conflict of interests. He has strong affiliations with persons whom I have offered testimony against. [He] is completely unwilling to defend me." The court denied Dodge's motion.

[¶4]  The deadline for motions and plea agreements was March 4, 2016. On August 9, 2016, over five months after the deadline, Dodge's counsel filed a motion for psychiatric examination under N.D.R.Crim.P. 12.2 and "NDCC, Section 12.1-04.1-03 et. seq."  The district court denied the motion for evaluation because notice was not filed that a defense under Rule 12.2 or N.D.C.C. § 12.1-04.1-03 et seq. was going to be asserted and because the time for filing pretrial motions had passed. The court additionally stated Dodge did not provide any evidence, and the court itself did not make any observations, that Dodge was incompetent to stand trial.

[¶5]  On August 17, 2016, Dodge himself filed another "motion to dismiss counsel" stating his attorney did not have any authority to act on his behalf. The same day, due to the allegations made against him in Dodge's motion, Dodge's attorney filed a motion to withdraw as counsel. The court denied both

motions and instead required Dodge's attorney to appear as standby counsel and assist Dodge during trial if requested, but relieved him of any further obligations to consult with Dodge. The court's denial of the motions was based, in part, on its belief that Dodge would not be satisfied with any counsel he was appointed, and he would continue to ask for new attorneys.

[¶6]   The case proceeded to trial. At the beginning of trial, the court gave Dodge the option of representing himself or having his attorney represent him. Dodge chose to have his attorney represent him. Because his attorney had not prepared for trial and had no communication with Dodge since he moved to withdraw, Dodge's attorney asked for a brief recess to consult with Dodge. During the recess, a settlement was reached. Dodge agreed to enter *Alford* pleas on all counts, waived a presentence investigation, and agreed to be sentenced immediately after entering his pleas.

[¶7]   The court conducted the plea procedure pursuant to N.D.R.Crim.P. 11. Dodge stated he discussed the pleas with his attorney and was prepared to enter a plea. When asked if he was satisfied with his attorney's advice, Dodge stated, "Good as I'm going to get." Dodge further stated he understood his rights, he understood he had a right to a jury trial, a jury would have to find him guilty beyond a reasonable doubt, and that by pleading guilty he was waiving these rights. Dodge was immediately sentenced following his guilty pleas.

[¶8]   Dodge did not file a direct appeal. Instead, Dodge filed an application for post-conviction relief claiming he received ineffective assistance of counsel and he was incompetent to stand trial, and therefore, his pleas were not knowingly, intelligently, and voluntarily entered into. Dodge was appointed counsel to represent him during the post-conviction proceedings. Dodge accused his first post-conviction counsel of withholding discovery from him even though his counsel informed the district court she provided Dodge discovery on multiple occasions. Dodge's first post-conviction counsel was allowed to withdraw. Dodge was again appointed counsel.

2

[¶9] Two psychological evaluations were completed during post-conviction proceedings. Dr. Lisota completed an evaluation for the State. Dr. Lisota concluded Dodge was presently able to communicate with his attorneys and understood the legal proceedings. Dr. Lisota further concluded Dodge's inability to work with his attorneys was a conscious decision rather than the product of a legitimate mental illness. Dr. Mugge conducted an evaluation for the defense. Dr. Mugge's report details accounts by Dodge of rampant sexual abuse as a child; of people stalking Dodge wherever he goes; that the criminal charges against him were a set up so his stalkers could steal his property; of sexual assault at the Stutsman County Jail facilitated by the guards; that his first attorney was associated with people that were stalking him; that his first attorney forced Dodge to sign power of attorney documents against his will in 2012 in Wisconsin; and that his trial attorney was associated with people whom Dodge had testified against. In her report, Dr. Mugge concluded Dodge suffered from a delusional disorder, and that "[w]hether intentionally produced or unintentionally experienced, delusional statements and accusations have impaired [Dodge's] ability to interact and communicate with his attorneys."

[¶10] At the post-conviction hearing, Dodge testified to many of the delusions highlighted in Dr. Mugge's report. Dodge's trial counsel testified that when he met with Dodge prior to trial, Dodge had little interest in discussing his defense or trial strategy. He stated Dodge was more concerned with retrieving silver ingots, which Dodge alleged were stolen by his first attorney, for his commissary in prison. After meeting with Dodge, Dodge's attorney realized Dodge may have had competency issues and filed the motion for evaluation.

[¶11] Both experts also testified at the post-conviction hearing. Dr. Lisota's testimony was consistent with his report. Dr. Mugge went beyond her report, in which she stated Dodge's delusions impaired his ability to communicate with his attorneys, and testified Dodge's delusions made him unable to communicate with his attorneys.

[¶12] Ultimately, the district court found Dodge was competent when he entered his pleas. The court found Dr. Lisota's report and testimony credible, and Dr. Mugge's report and testimony not credible. The court also found the

3

trial judge's determinations on Dodge's competency persuasive. Additionally, the court found Dodge's counsel's assistance was not ineffective because Dodge failed to establish "the defense of lack of criminal responsibility was available to him at the time of the plea."

## II

[¶13] Dodge argues he was incompetent when he entered his pleas and received ineffective assistance of counsel because his attorney failed to investigate his competency and bring the issue to the attention of the district court and, therefore, he should be allowed to withdraw his pleas. "An application for post-conviction relief, where a defendant is seeking to withdraw a guilty plea, is treated as a request under N.D.R.Crim.P. 11(d)." *State v. Howard*, 2011 ND 117, ¶ 3, 798 N.W.2d 675 (citing *Eaton v. State*, 2011 ND 35, ¶ 5, 793 N.W.2d 790). "After a court has accepted a guilty plea and imposed a sentence, a defendant cannot withdraw a plea unless withdrawal is necessary to correct a manifest injustice." *Id.* (quoting *Eaton*, at ¶ 5). The burden is on the defendant to prove a manifest injustice exists. N.D.R.Crim.P. 11(d)(2). "The court has discretion in finding whether a manifest injustice necessitating the withdrawal of a guilty plea exists, and we review the court's decision for abuse of discretion." *Howard*, at ¶ 3 (citing *Eaton*, at ¶ 5). "An abuse of discretion under N.D.R.Crim.P. 11(d) occurs when the court's legal discretion is not exercised in the interest of justice." *Id.* (citing *State v. Bates*, 2007 ND 15, ¶ 6, 726 N.W.2d 595).

## A

[¶14] Whether a defendant is competent to enter a plea is a question of fact, and a district court's finding on the issue will not be set aside on appeal unless clearly erroneous. *State v. Dahl*, 2010 ND 108, ¶ 6, 783 N.W.2d 41. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made." *Id.* (quoting *Heckelsmiller v. State*, 2004 ND 191, ¶ 5, 687 N.W.2d 454).

4

[¶15] "An incompetent criminal defendant cannot enter a valid guilty plea." *State v. Magnuson*, 1997 ND 228, ¶ 11, 571 N.W.2d 642 (citing *Godinez v. Moran*, 509 U.S. 389, 396 (1993)). "[T]he standard for deciding competency of a criminal defendant to enter a guilty plea is the same competency standard for standing trial." *Id.* (citing *Godinez*, at 390). "[I]f a defendant of doubtful competency wants to plead guilty, a trial court must first decide whether the defendant is competent and then must satisfy itself the guilty plea is voluntary." *Id.* (citing *Godinez*, at 400). The standard for determining if a criminal defendant is competent to stand trial is set forth in *State v. Gleeson*:

> "It has long been held the conviction of a mentally incompetent accused is a violation of constitutional due process. *Dusky v. United States*, 362 U.S. 402 [80 S.Ct. 788, 4 L.Ed.2d 824] (1960). The United States Supreme Court has summarized the test for determining if an accused is mentally competent to stand trial. *Id.* A defendant is incompetent when he lacks (1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' or (2) 'a rational as well as factual understanding of the proceedings against him.' *Dusky*, 362 U.S. at 402, 80 S.Ct. 788. This test is essentially codified at section 12.1-04-04, N.D.C.C., which states: 'No person who, as a result of mental disease or defect, lacks capacity to understand the proceedings against the person or to assist in the person's own defense shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity endures.'"

*Dahl*, 2010 ND 108, ¶ 7, 783 N.W.2d 41 (quoting *Gleeson*, 2000 ND 205, ¶ 9, 619 N.W.2d 858). "The crux of being able to 'consult with a lawyer with a reasonable degree of rational understanding' is being able to 'confer coherently with counsel and provide necessary and relevant information to formulate a defense.'" *Id.* (quoting *State v. VanNatta*, 506 N.W.2d 63, 65, 68 (N.D. 1993)). "[T]he presence of a mental illness does not [per se] equate with incompetency to stand trial." *VanNatta*, at 68.

[¶16] In *State v. Storbakken*, 246 N.W.2d 78, 81 (N.D. 1976), the district court, among other things, relied upon Storbakken's courtroom demeanor in determining Storbakken was competent to plead guilty. *Id.* When asked various questions by the court, Storbakken indicated he had completed the

eleventh grade of high school, he was employed as a sheetrock hanger, he was married, he was on parole for a burglary conviction in Minnesota, and it was his understanding that the State was to make no recommendation as to sentencing for conviction on the charge. *Id.* Based on this record, we concluded the district court did not err in determining Storbakken was competent to plead guilty. *Id.*

[¶17] In *Dahl*, 2010 ND 108, ¶ 8, 783 N.W.2d 41, the district court was presented with conflicting evidence, including expert reports and testimony, about Dahl's competency to stand trial. After weighing the conflicting evidence, the court determined Dahl was competent to stand trial. *Id.* at ¶ 4. We affirmed, stating:

> Although this case involves conflicting evidence concerning Dahl's ability to assist in his defense by coherently interacting with his attorney, sufficient evidence exists supporting the district court's finding Dahl was competent to stand trial. . . . "Conflicts in testimony [are] resolved in favor of affirmance, as we recognize the trial court is in a superior position to assess credibility of witnesses and weigh the evidence." *State v. Tollefson*, 2003 ND 73, ¶ 9, 660 N.W.2d 575 (quoting *State v. Heitzmann*, 2001 ND 136, ¶ 8, 632 N.W.2d 1).

*Id.* at ¶ 8.

[¶18] Here, the district court considered the trial court's determination that there was no indication Dodge was incompetent. Additionally, the district court stated in its order it did not observe anything during the post-conviction proceedings to indicate Dodge was incompetent. At the post-conviction hearing, Dodge was intentionally able to avoid being impeached on cross-examination. Based on his ability to manipulate the State's cross-examination of him during the post-conviction hearing, the court found Dodge was intelligent and familiar with the record.

[¶19] The district court was also presented with and considered conflicting expert reports and testimony on Dodge's competency and his ability to coherently confer with his attorneys. In her report, Dr. Mugge stated Dodge's

6

ability to work with his attorneys was "impaired," but she did not indicate that Dodge was unable to communicate with his attorneys or was incompetent when he entered his pleas. At the post-conviction hearing, Dr. Mugge testified Dodge could not coherently confer with his attorneys and was not competent when he entered his pleas. Because of this disparity, the court found Dr. Mugge's report and testimony "unpersuasive," and gave "little weight to her report and testimony." The district court also found there were no contemporaneous medical records supporting her position. On the other hand, the court found Dr. Lisota's report and testimony persuasive because his report and testimony were consistent with one another and because Dr. Lisota "has more experience in this type of evaluation." We resolve conflicts in testimony in favor of affirmance. Accordingly, and after reviewing the entire record, we conclude the district court did not err in finding Dodge was competent when he entered his pleas.

## III

[¶20] The standard for reviewing claims of ineffective assistance of counsel, as pronounced in *Strickland v. Washington*, is well established:

> [T]o prevail on a post-conviction relief application based on ineffective assistance of counsel, the petitioner must (1) "show that counsel's representation fell below an objective standard of reasonableness" and (2) "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 [104 S.Ct. 2052, 80 L.Ed.2d 674] (1984).

> > Surmounting *Strickland*'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial or in pretrial proceedings, and so the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's

7

representation is a most deferential one. . . . It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.

*Premo v. Moore* [562 U.S. 115], 131 S.Ct. 733, 739–40 [178 L.Ed.2d 649] (2011) (internal quotations and citations omitted). The two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 [106 S.Ct. 366, 88 L.Ed.2d 203] (1985). "Thus, a defendant must demonstrate both deficient representation by counsel *and* prejudice caused by the deficient representation." *Woehlhoff v. State*, 487 N.W.2d 16, 17 (N.D.1992). . . .

The first prong is measured using "prevailing professional norms," *Sambursky v. State*, 2006 ND 223, ¶ 13, 723 N.W.2d 524, and is satisfied if [the defendant] proves counsel's conduct consisted of errors serious enough to result in denial of the counsel guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687 [104 S.Ct. 2052].

*Lindsey v. State*, 2014 ND 174, ¶ 19, 852 N.W.2d 383 (quoting *Bahtiraj v. State*, 2013 ND 240, ¶¶ 9-10, 840 N.W.2d 605). "Courts need not address both prongs of the *Strickland* test, and if a court can resolve the case by addressing only one prong it is encouraged to do so." *Stein v. State*, 2019 ND 291, ¶ 10, 936 N.W.2d 389 (quoting *Booth v. State*, 2017 ND 97, ¶ 8, 893 N.W.2d 186). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

[¶21] Normally, the second prong of the *Strickland* test in the context of a guilty plea is satisfied if the defendant shows "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at ¶ 8 (quoting *Lindsey*, 2014 ND 174, ¶ 19, 852 N.W.2d 383). But, as other courts have opined, a petitioner's claim that his or her counsel was ineffective for failing to investigate his or her mental health status and present such information to the court "does not lend itself very well to the 'outcome' test in *Strickland*." *Hubbard v. State*, 31 S.W.3d 25, 38 (Mo.

8

Ct. App. 2000) (quoting *Bouchillon v. Collins*, 907 F.2d 589, 595 n.20 (5th Cir. 1990)).

[¶22] We have not previously decided the appropriate standard for determining ineffective assistance of counsel when a petitioner claims he or she was incompetent to enter a guilty plea. However, other courts have articulated how the second prong of the *Strickland* test is satisfied in this context:

> [I]n such a situation, "[w]ith respect to the prejudice prong of a claim of ineffective assistance of counsel, [the movant] need only demonstrate a 'reasonable probability' that he was incompetent, 'sufficient to undermine confidence in the outcome.'" [*Bouchillon*, 907 F.2d at 595] (*quoting Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698). "This is a lower burden of proof than the preponderance standard." *Id.* As such, in the context of a guilty plea where the movant has alleged that he or she was incompetent to plead guilty and his or her counsel was ineffective for failing to adequately investigate his or her mental health status, in determining whether the movant was prejudiced by his or her counsel's ineffective assistance, the motion court must first determine whether there was a reasonable probability that the movant was incompetent. *Id.* If the motion court determines that there was not a reasonable probability that the movant was incompetent, the inquiry can proceed to a second level, where the court determines whether the movant, but for his or her counsel's unprofessional errors, would not have pleaded guilty and would instead have insisted upon going to trial.

*Hubbard*, 31 S.W.3d at 38; *accord, e.g.*, *Camacho v. Kelley*, 888 F.3d 389, 394 (8th Cir. 2018); *United States v. Hammer*, 404 F. Supp. 2d 676, 792 (M.D. Pa. 2005); *State v. Hessler*, 886 N.W.2d 280, 290 (Neb. 2016); *Jeter v. State*, 417 S.E.2d 594, 596 (S.C. 1992). In other words, for Dodge to establish that he was prejudiced by his attorney's failure to investigate his competence and bring his competence to the attention of the district court, he must demonstrate by a reasonable probability that he was incompetent to plead guilty. *Theriot v. Whitley*, 18 F.3d 311, 313 (5th Cir. 1994).

[¶23] Our conclusion that the district court's finding that Dodge was competent when he entered his pleas was not clearly erroneous disposes of his claim of ineffective assistance of counsel. Dodge was not prejudiced because he has failed to demonstrate a reasonable probability, sufficient to undermine confidence in the outcome, that he was incompetent when he entered his pleas. Because Dodge was not prejudiced, Dodge has failed to establish he received ineffective assistance of counsel.

IV

[¶24] Dodge has not established withdrawal of his pleas is necessary to correct a manifest injustice. Therefore, the district court did not abuse its discretion by denying Dodge's application for post-conviction relief. The district court's order is affirmed.

[¶25] Gerald W. VandeWalle
     Jon J. Jensen, C.J.
     Daniel J. Crothers
     Jerod E. Tufte
     Lisa Fair McEvers