# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2021 ND 148

Yaasiin Aweis Isxaaq,                         Petitioner and Appellant

     v.

State of North Dakota,                   Respondent and Appellee

### Nos. 20210066-20210068

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Stephannie N. Stiel, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Kiara C. Kraus-Parr, Grand Forks, ND, for petitioner and appellant.

Alexis Madlom (argued), third-year law student, under the Rule on Limited Practice of Law by Law Students, and Nicholas A. Samuelson (appeared), Assistant State's Attorneys, Fargo, ND, for respondent and appellee.

**McEvers, Justice.**

[¶1]   Yaasin Aweis Isxaaq appeals from a district court order denying his applications for post-conviction relief, in which he sought to withdraw his guilty pleas in three underlying criminal cases. We affirm, concluding the district court did not err in denying Isxaaq's applications for post-conviction relief.

I

[¶2]   Isxaaq is a citizen of Somalia who gained lawful permanent resident status in 2018 after seeking asylum as a refugee in 2014. Isxaaq filed post-conviction relief applications regarding three underlying criminal cases, which were consolidated for hearing in the district court. Isxaaq was charged with theft in June 2016, and pleaded guilty to an amended charge of disorderly conduct later that month. Isxaaq was later charged with misdemeanor sexual assault in February 2017 and pleaded guilty in March 2017. Isxaaq was then charged with misdemeanor theft, and pleaded guilty in January 2020. All three charges were class B misdemeanors. Isxaaq was detained by Immigration and Customs Enforcement ("ICE"), pending deportation proceedings, on January 29, 2020. In all three cases, Isxaaq argued his guilty pleas were not knowingly, intelligently, or voluntarily made because he had not been properly advised on adverse immigration consequences, and because an interpreter was not used when he communicated with his attorneys.

[¶3]   At the evidentiary hearing on his applications, Isxaaq testified, as did two of his former trial attorneys. Isxaaq testified in all three cases he would not have pleaded guilty and instead would have proceeded to trial had he been properly advised on immigration consequences. Isxaaq alleged his guilty pleas were not knowing, intelligent, and voluntary due to a language barrier, and argued his counsel was ineffective for failing to utilize an interpreter. Both former trial attorneys testified they discussed potential adverse immigration

consequences with Isxaaq, had no trouble communicating with Isxaaq in English, and did not require an interpreter's services to advise him.

[¶4] The district court entered an order denying Isxaaq's applications for post-conviction relief on February 17, 2021, finding the record did not support his claim that his guilty pleas were not knowing and voluntary because he did not understand English, and Isxaaq failed to establish prejudice in all three cases.

## II

[¶5] On appeal, Isxaaq argues the district court erred because he received ineffective assistance of counsel and his pleas were not knowingly, intelligently, or voluntarily made in all three cases for two reasons: (1) he had difficulty understanding English without an interpreter, and his attorneys did not provide an interpreter, and (2) he was not properly advised on the immigration consequences of pleading guilty.

[¶6] Post-conviction relief proceedings are civil in nature and governed by the North Dakota Rules of Civil Procedure. *Morris v. State*, 2019 ND 166, ¶ 6, 930 N.W.2d 195. The applicant bears the burden of establishing grounds for post-conviction relief. *Id.* Questions of law are fully reviewable on appeal of a district court's decision in a post-conviction proceeding. *Id.* A district court's findings of fact in a post-conviction proceeding will not be disturbed on appeal unless they are clearly erroneous under N.D.R.Civ.P. 52(a). *Id.* A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if it is not supported by any evidence, or if, although there is some evidence to support the finding, a reviewing court is left with a definite and firm conviction a mistake has been made. *Id.*

[¶7] When an applicant for post-conviction relief seeks to withdraw his guilty plea, the application is treated as one made under N.D.R.Crim.P. 11(d) and the district court considers whether relief is necessary to correct a manifest injustice. *Kremer v. State*, 2020 ND 132, ¶ 5, 945 N.W.2d 279. This Court reviews whether circumstances establish a manifest injustice under an abuse of discretion standard:

2

When resolving a motion to withdraw a guilty plea, the district court applies N.D.R.Crim.P. 11(d)(2), which provides: "Unless the defendant proves that withdrawal is necessary to correct a manifest injustice, the defendant may not withdraw a plea of guilty after the court has imposed sentence." To establish manifest injustice, a defendant must "prove serious derelictions on the part of the defendant's attorney that kept a plea from being knowingly and intelligently made." Whether the circumstances establish a manifest injustice is within the district court's discretion, and we reverse only for an abuse of discretion. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or it misinterprets or misapplies the law.

*State v. Awad*, 2020 ND 66, ¶ 2, 940 N.W.2d 613 (internal citations omitted).

[¶8] An applicant seeking to withdraw his guilty plea alleging ineffective assistance of counsel must surmount the two-prong test set out by *Strickland v. Washington,* 466 U.S. 668 (1984). An applicant for post-conviction relief bears a "heavy burden" to prevail on an ineffective assistance of counsel claim. *Bahtiraj v. State*, 2013 ND 240, ¶ 8, 840 N.W.2d 605.

[¶9] To satisfy the first prong under *Strickland*, an applicant must show his or her counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688, 694. To satisfy the second prong, an applicant must establish there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Lindsey v. State*, 2014 ND 174, ¶ 19, 852 N.W.2d 383.

[¶10] The first prong is measured against "prevailing professional norms." *Bahtiraj*, 2013 ND 240, ¶ 10. In *Padilla v. Kentucky*, the United States Supreme Court analyzed the first prong of *Strickland* and held that if the law is clear, constitutionally competent counsel would advise a noncitizen client that a conviction or guilty plea would result in mandatory deportation. 559 U.S. 356, 360 (2010). Conversely, if the law is not clear, constitutionally competent counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369.

[¶11] To meet *Strickland's* second prong, an applicant must establish prejudice by convincing "the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U. S. at 372. "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 137 S.Ct. 1958, 1967 (2017). Determining whether rejecting the plea was reasonable requires looking to "contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* All courts require something more than a defendant's subjective, self-serving statement that, with competent advice, he would have rejected the plea agreement and insisted on going to trial. *Bahtiraj*, 2013 ND 240, ¶ 16.

[¶12] "Courts need not address both prongs of the *Strickland* test, and if a court can resolve the case by addressing only one prong it is encouraged to do so." *Osier v. State*, 2014 ND 41, ¶ 11, 843 N.W.2d 277.

### III

[¶13] We first address Isxaaq's argument his counsel was ineffective and his pleas were not knowing, intelligent, or voluntary because his attorneys did not use an interpreter to confer with him. Whether a defendant is able to adequately understand English without an interpreter is a finding of fact. *See Morris v. State,* 2017 ND 104, ¶ 8, 893 N.W.2d 475. Findings of fact in a post-conviction proceeding will not be disturbed unless they are clearly erroneous under N.D.R.Civ.P. 52(a). *Id.* Conflicts in testimony are resolved in favor of affirmance, as this Court has recognized the district court is in a superior position to assess credibility of witnesses and weigh the evidence. *Dodge v. State*, 2020 ND 100, ¶ 17, 942 N.W.2d 478.

[¶14] Isxaaq testified he had difficulty understanding his attorneys because English is not his first language, and he did not understand the consequences of pleading guilty. Both of Isxaaq's former attorneys testified they had no difficulty speaking with Isxaaq in English and did not need an interpreter to advise him. One of the attorneys testified she was familiar with Isxaaq, having previously represented him prior to the case that is the subject of this appeal.

4

[¶15] The district court found the record does not support Isxaaq's claim that he was unable to understand English or that his guilty pleas were not knowing and voluntary on that basis. The court also found the record contained colloquies that showed Isxaaq's understanding of English. These findings are not clearly erroneous. The court did not err in denying Isxaaq's claims of ineffective assistance of counsel based on a failure to use an interpreter.

IV

A

[¶16] Isxaaq gave uncontradicted testimony that his attorney in the 2016 disorderly conduct case did not advise him on the immigration consequences of pleading guilty. The district court relied on the prejudice prong of *Strickland* to resolve this claim of ineffective assistance of counsel. Discussing the prejudice prong, the court summarized Isxaaq's testimony as follows:

> MS. KRAUS-PARR: If you understood the immigration consequences of your conviction, would you have proceeded to trial?
>
> THE WITNESS [Isxaaq]: Yes.
>
> MS. KRAUS-PARR: Can you explain to the Court why that would have been a reasonable decision to go to trial?
>
> THE WITNESS: Right now I know the consequences—the immigration consequences for me so that's why I have taken this position.
>
> MS. KRAUS-PARR: Okay. You're currently being detained by immigration—or Department of Homeland Security—on an immigration hold. Is that correct?
>
> THE WITNESS: Yes. Yes, because of these cases as we are.
>
> . . .
>
> MS. KRAUS-PARR: The maximum punishment if you had gone to trial and lost would have been 30 days in custody. Thirty days in custody

5

versus possibly being deported. Would you have taken your chances at trial?

THE WITNESS: Thirty days in jail.

[¶17] The district court went on to find this evidence was insufficient to meet the prejudice burden, concluding Isxaaq did not identify any weaknesses in the State's case, but rather simply testified if he knew in 2016 what he knows now, after four years and several intervening convictions, he would have gone to trial. The court found Isxaaq failed to allege any facts, if proven, that would support a conclusion that going to trial would have been rational. The court also considered the amendment of the charge from theft to disorderly conduct. The court found there was no reasonable probability that but for the alleged errors by his attorney, Isxaaq would not have pled guilty. In making these findings, the court relied on the analysis set forth in *Bahtiraj v. State*.

[¶18] In *Bahtiraj,* this Court listed a number of examples of how an applicant could allege facts that, if proven, would support a conclusion that the decision to reject a plea bargain would have been rational. 2013 ND 240, ¶ 16. Examples included valid defenses, a pending suppression motion that could undermine the prosecution's case, or the realistic potential for a lower sentence. *Id.* This Court further stated, "Under the *Strickland* test, the potential strength of the state's case must inform the court's analysis, when determining prejudice, inasmuch as a reasonable defendant would surely take it into account." *Id.* at ¶ 17 (citations omitted). Additional factors listed for the district court to consider may include:

> (a) whether the defendant pleaded guilty in spite of knowing that the advice on which he claims to have relied might be incorrect, (b) whether pleading guilty gained him a benefit in the form of more lenient sentencing, (c) whether the defendant advanced any basis for doubting the strength of the government's case against him, and (d) whether the government would have been free to prosecute the defendant on counts in addition to those on which he pleaded guilty.

*Id.* (quoting *Chhabra v. United States*, 720 F.3d 395, 408 (2d Cir. 2013)).

[¶19] However, these examples are not an all-inclusive list, nor do they preclude other rational arguments why a defendant would choose to go to trial rather than plead guilty despite long odds. In *Lee*, 137 S.Ct. 1958, the United States Supreme Court acknowledged there may be unusual circumstances where a defendant can demonstrate a reasonable probability he would have rejected the plea had he known it would lead to mandatory deportation. In *Lee,* the Supreme Court concluded the defendant had met his burden to show prejudice. *Id.* at 1967-68. This conclusion, however, was based on a record where his attorney testified he incorrectly advised Lee he was not subject to mandatory deportation, when in fact he was. *Id.* at 1960. In addition, both he and his attorney testified that Lee would have gone to trial had he known the deportation consequences, and Lee was able to demonstrate the same with contemporaneous evidence using the colloquy from his change of plea hearing. *Id.* at 1961.

[¶20] The facts here are distinguishable from *Lee*. Here, no argument was made that Isxaaq was subject to mandatory deportation for pleading guilty to disorderly conduct. Isxaaq did not testify or provide any contemporary evidence that he was more concerned with the possible immigration consequences rather than getting the plea deal, which amended his charge from theft, a potential crime of moral turpitude, to disorderly conduct. While it is not conclusive, the plea bargain to the amended charge may have benefitted Isxaaq, because this conviction was not listed on the notice from ICE as one of the convictions ICE relied on as a reason to deport him.

[¶21] It does not appear the district court considered the progression in the law under *Lee* as it pertains to another possible rational argument why a defendant may wish to withdraw a guilty plea based on immigration consequences. Regardless of the court's lack of analysis under *Lee,* Isxaaq presented no contemporaneous evidence showing immigration consequences were the determining factor in his decision to accept the plea bargain in this case. The court did not err in concluding Isxaaq failed to meet his burden to show a reasonable probability that but for the alleged errors by his attorney, he would have pleaded guilty to disorderly conduct and would have insisted on going to trial.

[¶22] Isxaaq testified his attorney in the 2017 sexual assault case did not advise him on how the conviction would affect his ability to become a citizen or reenter the country, and stated he would have gone to trial rather than plead guilty had he been properly advised. Isxaaq's attorney in this matter testified that he advised Isxaaq that a sexual assault conviction carried a risk of deportation as a crime of moral turpitude, but stated the immigration consequences of the plea were not clear at the time of his representation.

[¶23] The district court again relied on the prejudice prong of *Strickland* to resolve this claim of ineffective assistance of counsel. Although Isxaaq testified he was not informed of the immigration consequences, the court found the record from the dispositional conference held on March 7, 2017 contradicted his assertions, quoting a portion of the transcript where Isxaaq's attorney stated he discussed the immigration consequences and admonished him that ICE may take an interest in him. In addition, the court noted that at the change of plea hearing, Isxaaq expressed no concern about going ahead with a plea despite this advice. The court also found Isxaaq did not identify any weakness in the State's case and his statements speculating on a different outcome were insufficient to show prejudice under *Strickland*. The court also noted Isxaaq entered an Alford plea agreeing that if the facts as alleged were presented to a jury, they were sufficient for a jury to find him guilty beyond a reasonable doubt at his change of plea hearing. The court found there was no reasonable probability that but for alleged errors, Isxaaq would have insisted on going to trial. Again, Isxaaq presented no contemporaneous evidence showing immigration consequences were the determining factor in his decision to accept the plea bargain in this case. The court did not err in concluding Isxaaq failed to meet his burden to show a reasonable probability that but for the alleged errors by his attorney, he would not have pleaded guilty and would have insisted on going to trial.

C

[¶24] Isxaaq testified his attorney in his 2020 theft case did not advise him the conviction would result in removal or discuss how the conviction would impact his legal permanent resident status. Isxaaq stated he would have rejected the plea and proceeded to trial with proper counsel. His attorney in this matter testified she advised Isxaaq the theft conviction "could make him a noncitizen" and could bar his reentry.

[¶25] The district court again disposed of the claims for lack of prejudice under prong two of *Strickland*. The court discussing the prejudice prong in this case, summarized Isxaaq's testimony as follows:

> MS. KRAUS-PARR: Sure. If [you] had known about the immigration consequences at the time, would [you] have risked going to trial or would [you] still have plead guilty to the charge?
>
> THE WITNESS [Isxaaq]: I would go to trial.
>
> . . .
>
> KRAUS-PARR: Sure. Which risk is greater? The immigration consequences – so losing [your] status, being removed, not being able to reenter, possibly never becoming a citizen, those are the risks – immigration risks are greater than a conviction of the 30 days if [you] had gone to trial? Which is greater?
>
> THE WITNESS: So it would be better for me to go to the trial and I would select that. Whatever is better, that.

[¶26] Here there was contemporaneous evidence of Isxaaq's position regarding his immigration status, but it is not helpful to his position. His attorney testified Isxaaq was already subject to an ICE hold, and stated Isxaaq wanted to change his plea when the hearing was only scheduled to address his bond. His attorney testified she explained his conviction would result in his removal, could affect his lawful permanent resident status, and he would not be allowed back into the United States. She explained that because deportation

9

proceedings had already started, this conviction would be included as part of the deportation process.

[¶27] The district court found Isxaaq's testimony was insufficient to meet his burden in this case because again he failed to allege any weakness in the State's case, and failed to allege facts if proven would support a conclusion that going to trial would be rational. The court did not err in concluding Isxaaq failed to meet his burden to show a reasonable probability that but for the alleged errors by his attorney, he would not have pleaded guilty, and would have insisted on going to trial.

[¶28] "All courts require something more than defendant's subjective, self-serving statement that, with competent advice, he would not have pled guilty and would have insisted on going to trial." *Bahtiraj*, 2013 ND 240, ¶ 16 (internal quotations omitted). Regardless of whether his attorneys provided effective counsel, Isxaaq's claims fail on the second prong of *Strickland*, because he offered no evidence contemporaneous with the entry of his plea to suggest proceeding to trial would have been rational, and therefore did not establish prejudice. Isxaaq failed to meet his burden to establish prejudice under the second prong of *Strickland* to support any of his ineffective assistance of counsel claims.

[¶29] Without establishing he was prejudiced by his counsels' performance, Isxaaq cannot show a manifest injustice would result if not allowed to withdraw his guilty pleas. The district did not abuse its discretion in denying Isxaaq's applications for post-conviction relief, because he failed to establish a manifest injustice would result if not allowed to withdraw his pleas.

# V

[¶30] We have considered the remaining issues and arguments and consider them to be unnecessary to our decision or without merit. The district court order is affirmed.

[¶31]  Jon J. Jensen, C.J.
        Gerald W. VandeWalle
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte